STATE EX REL. ASSOCIATED INDEMNITY CORPORATION, Respondent, vs. MORTENSEN, Commissioner of Insurance, Appellant.

*March 8—April 7, 1937.*

For the appellant there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

For the respondent there was a brief by *La Follette, Rogers & Roberts,* and oral argument by *W. Wade Boardman,* all of Madison.

WICKHEM, J.   This appeal presents a narrow and simple question of statutory construction.   Petitioner is a stock insurance company organized under the laws of California, having a paid-in capital of $500,000, and a surplus of $1,176,000.   Petitioner was authorized to do business in Wisconsin on August 1, 1931, and its license was renewed each year thereafter until May 1, 1935, when the company voluntarily withdrew from the state.   On August 22, 1936, it again applied for a license to transact business of several types in this state.   This application was denied by the insurance commissioner upon the ground that under the provisions of sec. 201.11 (1), Stats., as amended by chs. 120 and

489, Laws of 1933, and ch. 478, Laws of 1935, its capital was insufficient to entitle it to a license. Sec. 201.11 (1) reads as follows:

"(1) No stock insurance company shall transact business unless it has capital, in cash or invested as provided by law, of at least two hundred thousand dollars for the insurance specified in any one subsection of section 201.04; with an additional one hundred thousand dollars for the insurance mentioned in any other subsection which may be transacted by such company, *provided that no such company shall be subject to higher capital requirements than those in effect when it began to transact the business of insurance in this state.* No additional capital shall be required for the insurance specified in subsection (17) of section 201.04."

It is conceded that unless the proviso exempts petitioner, its capital is insufficient to meet the requirements of sec. 201.11 (1). The sole issue presented upon this appeal is whether petitioner lost the benefit of this exemption by withdrawing from the state in 1935. The trial court held that it did not, and we think that this conclusion was correct. The controversy turns upon the meaning of "no such company" and "began to transact the business of insurance in this state."

A number of rules of construction are proposed by the appellant and are sustained by the authorities. It is conceded that, where a statute is plain and unambiguous, no interpretation is necessary. *McGarvey v. Independent O. & G. Co.* 156 Wis. 580, 146 N. W. 895; *State ex rel. U. S. F. & G. Co. v. Smith,* 184 Wis. 309, 199 N. W. 954. It is contended, however, that there is room for judicial construction of the statute even though it is plain and unambiguous in its letter, where to give it a literal meaning would produce absurd results or involve the legislative purpose in obscurity. *Pfingsten v. Pfingsten,* 164 Wis. 308, 159 N. W. 921; *Jordan Land Co. v. Freeborn,* 149 Wis. 159, 135 N. W. 751; *State ex rel. Husting v. Board of State Canvassers,* 159 Wis. 216, 150 N. W. 542.

We deem it unnecessary to enter into an elaborate discussion of these rules of construction. The statute is literally unambiguous. There can be no possible question that the term "such company" refers merely to stock insurance companies, and there can be no question as to the literal meaning of the phrase "when it began to transact the business of insurance in this state." It is suggested that the statute, sec. 201.11 (1) was intended to extend the benefits of its exemption only to such companies as were doing business in this state at the time of enacting the increased requirements. Even upon this construction, petitioner would be entitled to a license since it was then doing business within the state. It is claimed that this statute was intended to add to the requirements of insurance companies for the protection of those purchasing policies of insurance, and that it would be absurd to suppose that the legislature intended to make the fact that a company had done business in the state at one time the basis exempting it from satisfying the capital requirements of the statute. This cannot be said to be such an absurd or an unreasonable result as to indicate that the unambiguous language of the statute does not mean what it says. Insurance companies which were in business at the time of the amendment and continued this business are permitted by the proviso to operate upon what is declared by the section to be an inadequate capital. It cannot be demonstrated that there is such a marked distinction between the two situations that a failure to distinguish them produces absurd results by seriously impairing the protection designed for the public. Further than this, no alternative meaning or sense is suggested to which the words of the statute can accommodate themselves. The rule that the clear letter of a statute will be departed from where absurd results would otherwise follow must be carefully applied. The danger is that of substituting the judgment of the court for that of the legislature as to what is sound or absurd. The rule is only one of construction; the fact that absurd or unjust results follow the literal

application of the language simply justifies a search of the statute for further but perhaps less obvious indications of legislative intent. It does not, however, justify a court in amending the statute or giving it a meaning to which its language is not susceptible merely to avoid what the court believes are inequitable or unwise results.

*By the Court.*—Order affirmed.

FAIRCHILD, J. (*dissenting*). The language of the statute is to be read in the light of its actual purpose. It reads, in part, "No stock insurance company shall transact business unless it has capital" of a certain amount. It does contain a provision evidently calculated to prevent the disturbance of approved companies presently doing business within the state. I am not concerned over the ambiguity in the wording of the exception, for when interpreted strictly according to its letter, it becomes unreasonable and inconsistent with the purpose of the statute. Suppose, for example, that a company which ceased to do business here twenty years ago sought now to re-enter the state upon the strength of its compliance with the requirements as to capital of the remote period at which it originally entered the state. In the case before us, the insurance company, after doing business in the state for some years, voluntarily left. It now seeks a license and desires to re-enter. It is not here and it cannot do business without a license. The fact that some time previously its qualifications met our standards, or the fact that it was a company in good standing when it chose to leave the state, does not alter the situation. The statute should be complied with before the issuing by the commissioner of the required license. I am of the opinion that the attorney general and the insurance commissioner are contending for the correct principle.

I am authorized to say that Mr. Justice FRITZ joins in this dissent.