No. 18,308.

CITY OF LITTLETON *v.* JACK E. WAGENBLAST.
(338 P. [2d] 1025)

Decided May 11, 1959.

Mr. LESLIE A. GROSS, for plaintiff in error.

Mr. GLENN L. DALY, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE City of Littleton seeks reversal of a judgment of the County Court of Arapahoe County granting the petition of defendant in error which sought disconnection of his land following annexation by the City of Littleton. For clarity and convenience we shall refer to the plaintiff in error as the city and to defendant in error as petitioner or as Wagenblast. The references to Colorado Revised Statutes of 1953 will be by chapter, article and section number only.

The action was commenced in the County Court of Arapahoe County by the filing of a petition by Wagenblast pursuant to 139-11-6. In substance, the petition alleged that on January 1, 1957, Littleton had annexed a certain tract of land which included the land of petitioner and that petitioner was aggrieved in that:

1. The tract is unoccupied except for a service sta-

tion at the intersection of Littleton Broadway and Denver Broadway.

2. The tract is in the Southeast Englewood Water District and subject to assessment therefor, and is in the Cherry Hills Fire District and there also is subject to assessment.

3. Annexation will result in double assessment.

4. Petitioner was opposed to the annexation.

The city moved to dismiss the petition on the ground that it failed to state a claim under the pertinent statute, and it is argued on its behalf that the annexation statutes do not contemplate a court review of annexation and do not empower the county court to decree disconnection upon the basis of individual injustice — that the word "aggrieved" as used in the statute cannot be construed to mean more than injury arising from failure to comply with the requirements of annexation.

The judgment of the county court favored petitioner and contained findings that the property of the petitioner had adequate water, fire and sewage service, that he had opposed the annexation, and concluded that the petitioner was aggrieved within the terms of the pertinent statutory provision.

The court also found that Littleton was an incorporated city at the time of the annexation and had acquired the status of a city of the second class as of the time of the petition seeking disconnection.

The land in question is depicted on a map which is part of the record. It consists of 6.5 acres and is situated at the intersection of South Broadway and Littleton Boulevard. It is on the northeast corner of the intersection and is a tract 440 feet in width (from Broadway east) and 660 feet in length (from Littleton Boulevard to the north). Immediately to the east of the Wagenblast land is a school tract, School District No. 6, where Littleton High School is located. This school land was also included in the annexation along with the Wagenblast land. Littleton complains that the county court's

decree would create a buffer between the city and the school district, and would afford limited linear contiguousness, and limited access. From the point of view of regularity of boundaries, it is to be observed that the annexed territory creates a bulge to the east of Littleton, and disconnection of petitioner's property would increase the irregularity even more. On this point, the judge observed in his decree: "The irregularity now existing in the boundaries would not be improved by disconnection."

The section under which the petition herein was filed is 139-11-6 which provides:

"Section 6. Any person aggrieved by any annexation proceedings had under this Act, may apply at any time within 90 days after the effective date of the approving ordinance to the county court of the county in which his land is situated for a hearing and appropriate relief. No appeals shall be from judgments of the county court in any proceedings under this Act, but writs of error to such judgments shall be as in other civil cases."

Petitioner contends that the above section is a broad remedial statute under which the court has a discretion to determine whether a petitioner is aggrieved, following which it has jurisdiction to award the relief indicated, including that of disconnection.

Thus, the basic issue in the case is the scope of the quoted statute. The question is whether the statute authorizes a hearing and the granting of relief only with respect to failure to conform to or follow the procedures required in annexation, or whether the statute vests in the county court plenary powers to grant relief in accordance with the justice or equities of the individual case.

There are at least three reasons to support our conclusion that the statute does not confer jurisdiction on the county court to hear appeals of individual property owners following annexation and to grant or deny dis-

connection based upon the county court's uncontrolled discretion.

■ *First.* The statute itself is vague. It does not contain any expression indicating legislative intent to confer jurisdiction on the county court to decree disconnection as that court may deem proper to do so. While it allows an aggrieved party to "apply for a hearing and appropriate relief," "appropriate relief" is a far cry from disconnection. If the assembly had intended the county court to have power to disconnect parts or portions of annexed territory, it would have been a simple matter for it to have so stated. Apart from Section 139-11-6, the legislature could have specifically authorized the county court to grant disconnection had it intended to do so. Such authorization is contained in the succeeding articles of the same chapter. Thus, 139-12-1 et seq. specifically provides for disconnection of a contiguous tract of land aggregating 20 or more acres and 139-13-1, et seq., authorizes disconnection of farm land. The provisions of these two articles specify the procedure to be followed and the standards which obtain where disconnection is sought. Although disconnection of a tract of less than 20 acres is not specifically treated, it does not follow from this fact that the court may invade the legislative field by ruling that disconnection of small tracts is included within the term "appropriate relief."

*Second.* Article 11 of Chapter 139, considered in its entire context and taking its legislative history into account, does not support the contention of Wagenblast that disconnection for the benefit of an injured property owner was contemplated as a remedy when 139-11-6 was adopted.

139-11-1, as amended, provides that territory may be annexed to a city, city and county or incorporated town provided the territory is eligible as set out in 139-11-2 and provided the procedure set forth in 139-11-3 and 139-11-4 has been complied with.

Such territory is eligible if a percentage of its boundaries are contiguous with those of the city.

The procedure prescribed by 139-11-3 may be summarized as follows:

a. A petition is filed with the legislative body (the city council) by the owners of more than 50% of the land and also constituting a majority of the owners residing in the territory at the time.

b. If no counter-petition is filed the council accepts or rejects the petition by resolution.

c. If the petition is accepted, publication of notice is had under 139-11-4 and an annexation ordinance is passed, maps are appropriately filed and annexation is complete.

d. 139-11-4 describes the necessary publication referred to above and prescribed the requirements of a counter-petition (at least ⅔ of the number who signed the original petition).

e. The council determines the sufficiency of the counter-petition. If it is found to be sufficient it may nevertheless pass an annexation ordinance, but must refer the documents to the county court for a decree of annexation.

f. The county court appoints election commissioners to forthwith call an election and a simple majority of qualified landowners determines whether annexation shall follow.

g. Election can be dispensed with if there are less than 25 qualified voters, provided more than ⅔ of these have committed themselves by signing the original petition.

The next section is 139-11-5 and this deals with costs of the annexation. Then follows the section which authorizes an aggrieved person to seek redress, the meaning of which is now in question.

The statutes which are described (and the summary we have given is not intended to be more than that and should not be regarded as a construction of the

statutes)˙ were enacted in 1947. See Chapter 314, 1947 Session Laws. The annexation chapter amended provisions which had been adopted in 1945 and one important difference is that under the 1947 Act the council was authorized, if no counter-petition was filed or if it found the counter-petition to be insufficient, to pass an annexation ordinance without submitting the matter to the county court. Under the 1945 Act the county court supervised the annexation regardless of the sufficiency of the counter-petition. The predecessor of 139-11-6 authorized a review of county court proceedings in the Supreme Court. It would seem, therefore, that the new 139-11-6 gave a remedy by petition to an aggrieved person to the county court only because of the possibility that the council would pass an annexation ordinance without submitting the matter to the court.

All of this leads to the conclusion that the function of the county court in such proceedings is to provide a forum in order to insure first, that the area is eligible and, secondly, that the procedural requirements of the statute have been fully complied with. These are judicial functions.

The annexation proceedings are somewhat intricate and this complexity in turn demonstrates the need for a county court hearing for the purpose of testing its sufficiency; again the exercise of a judicial function.

To construe the statute (139-11-6) as urged by petitioner would bring 139-11-3 and 4 into serious conflict with 139-11-6 in that the former sections authorize annexation upon fulfillment of the conditions therein required, whereas the latter section under the requested construction would allow the county court to immediately disconnect part or all of that which had been painstakingly annexed.

It is unreasonable to suppose that the legislature intended the county court to have discretion to undo annexation proceedings for reasons not set forth in the statutes in order to relieve a single individual. We are

unable to read into 139-11-6 an authority such as that which was here exercised.

 *Third.* There exists no inherent power in a court to grant a disconnection. The power of annexation and disconnection is essentially legislative and absent an express statutory authorization the court lacked jurisdiction to enter the questioned decree. The case of *Edgewater v. Liebhardt,* 32 Colo. 307, 76 Pac. 366, lends support to our conclusion that the authority in question must be expressly granted and cannot be impliedly read into a statute. This was a statutory disconnection suit. Edgewater there took the position that the statute was void because it delegated legislative power to the judiciary. The Court there held, however, that the statute was valid and that the court had acted in accordance with the express authorization contained in it. It was pointed out that the procedure is strictly a statutory one and that once the required conditions are shown to have been fulfilled the Court has no discretion in the premises. The language is helpful in the present analysis:

` "In the brief of counsel it is taken for granted that the county court is, under the statute, vested with discretionary power, as though the statute contained the words found sometimes in similar statutes, directing the court to grant the petition after hearing, 'If justice and equity require that such territory should be disconnected.' But no such provision is contained in the statute, and the words 'determine' and 'should' found therein do not authorize the court to do as it pleases. The statute is, in our opinion, mandatory; and if, upon the trial, it appears that the conditions required to be established by the statute have been established, it becomes the duty of the court to enter a decree disconnecting the territory from the city or town. It is not denied here that the statements contained in the petition were established, and a reversal of the judgment is sought upon the sole ground that the law under which the proceedings were brought is unconstitutional." 32 Colo. 309, 310.

To the same effect are *Richelt v. Julesburg,* 90 Colo. 258, 8 P. (2d) 708; *Town of Fruita v. Williams,* 33 Colo. 157, 80 Pac. 132; *Town of Sheridan v. Nesbitt,* 123 Colo. 121, 227 P. (2d) 1000. See also McQuillan Municipal Corporation (3rd Ed.), Vol. 2, pp. 326, 328 wherein it is said:

"* * * It is hardly necessary to say that, in the absence of legislation, a court possesses no power to detach territory from a municipality."

To the same effect are *Rhyne, Municipal Law,* pp. 33, 40, 42, notes 27, 29 on p. 40, and the annotations 69 A.L.R. 266, 64 A.L.R. 1336, 16 C.J.S. 638, Section 139 (2), *Constitutional Law.*

There are numerous decisions which consider the question whether the particular delegation of legislative powers is valid and which thus inferentially support our viewpoint that the annexation and disconnection powers are essentially legislative and must therefore be expressly spelled out in the statute. Some of these are *State v. Town of Riverdale,* 244 Ia. 423, 57 N.W. (2d) 63 (1953); *In Re Ruland,* 120 Kan. 42, 242 Pac. 456 (1926); *Udall, Mayor v. Severn, et al.,* 52 Ariz. 65, 79 P. (2d) 347 (1938); *Edgecombe v. City of Rulo,* 109 Nebr. 843, 192 N.W. 499; *In Re Fullmer,* 33 Utah 43, 92 Pac. 768 (1907).

In *State v. Riverdale,* supra, the validity of the Iowa annexation statute was attacked on the ground that it delegated legislative powers. The statute empowered the court to determine "desirability of such annexation." It was held that the statute was unconstitutional in that it delegated unlimited legislative power to the courts. The Iowa Court held that in annexation proceedings courts are limited to determination of facts as distinguished from the exercise of a general discretion involving the public interest. The opinion cites most of the cases on the subject of validity, and overrules a former Iowa decision, that of *Burlington v. Leebrick,* 43 Iowa 252, which allowed the court to decree annexation

if "justice and equity require" it. The Court concluded as follows:

" * * * Such a requirement as a determination of desirability leaves the court free to first formulate all of the conditions precedent to annexation and then find if they exist."

*In Re Ruland,* supra, a statute was considered which provided that the court hear testimony as to the "advisability of making such addition" and which authorized the court to decree annexation following a finding that annexation was in the best interests of the city and not injurious to property owners. This was also held to constitute an unconstitutional delegation of legislative power.

In *Udall v. Severn,* supra, a statute which allowed the court to determine the political and economic advisability of annexation was held invalid. Here it was said:

" * * * We, therefore, conclude that, in so far as the Legislature delegates to the courts the right of determining the existence of certain facts stated by the Legislature to be essential to the addition of territory to a municipality are concerned, the function of the court is judicial and properly exercised, but in so far as its ultimate action is made to depend upon unfettered discretion as to whether, politically and economically speaking, it is advisable that the annexation is made, such function is purely legislative in its nature and, impliedly at least, vested by our Constitution exclusively in the Legislative Department of the government, and cannot be delegated to the Judicial Department."

The authorities are not uniform in condemning legislation which vests annexation or disconnection discretion in courts. Thus, in *Edgecombe v. City of Rulo,* supra, the statute provided that "If the court find in favor of the petitioners, and that justice and equity require that such territory * * * be disconnected, * * * it shall enter a decree accordingly." A decree in accordance with the statute was there upheld. *In Re Fullmer.*

supra, the Court actually passed on the "justice and equity" standard and upheld it as a valid delegation of power.

Although the validity of 139-11-6 is not questioned in the case at bar, the cited authorities illustrate that annexation and disconnection powers are essentially legislative in character and show the necessity for explicit standards defining and circumscribing the function of the Court in connection with their exercise. 139-11-6 does not even supply the "justice and equity" standard which is found in some of the statutes and thus petitioner's position is clearly revealed. He asks that the statute be construed so as to supply this omission and approve a proposition that the county court can then proceed to determine what constitutes "justice and equity." To give effect to such construction would require the Court to indulge in judicial legislation. This we cannot do.

We are not called upon to determine and we do not formulate any rule as to what constitutes a valid delegation of legislative power inasmuch as the legislature has not in the instant statute granted any such power to the county court.

It is our conclusion that 139-11-6 was intended to empower the county court to examine the annexation proceedings and to determine whether the statutory procedures have been followed. Here the county court exercised powers not granted to it by legislative enactment. It follows that the motion to dismiss the petition should have been granted.

Accordingly, the cause is reversed and remanded with directions to dismiss the Wagenblast petition.

Mr. Justice Sutton not participating.