## No. 21070.

THE CITY AND COUNTY OF DENVER, ET AL., *v.*
KENNETH G. HOLMES, ET AL.
(400 P.2d 901)

Decided April 5, 1965.     Rehearing denied April 26, 1965.

MAX P. ZALL, City Attorney, THOMAS G. ROCHE, Assistant, for plaintiff in error City and County of Denver.

H. E. CARLENO, ROBERT R. GALLAGHER, JR., for defendants in error Kenneth G. Holmes, Dorothy V. Holmes, Robert G. Fawcett and Loretta V. Fawcett, and College View Civic Association.

RICHARD D. DITTEMORE, for defendant in error Board of County Commissioners of Arapahoe County.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS action was instituted pursuant to C.R.S. '53, 139-11-6, to annul a Denver city ordinance (No. 65, Series of 1962) whereby certain lands in Arapahoe County were to be annexed.

The plaintiffs in the trial court are the defendants in error here. The four named plaintiffs are residents and real estate taxpayers in the area sought to be annexed, representing the landowners who are opposed to the annexation. The College View Civic Association is in like category; the Board of County Commissioners are referred to as the legal representatives of the County of Arapahoe, which latter entity is designated in the complaint as "the owner" of certain roads, streets, public ways and alleys in the area sought to be annexed.

The trial court entered judgment in favor of the plaintiffs below and ordered that the annexation ordinance "be vacated, cancelled and annulled" upon the finding that said petition for annexation is void and of no effect by reason of the fact that it does not contain the signatures of the owners of more than 50% of the subject property pursuant to the requirements set forth in C.R.S. '53, 139-11-3.

The basis of the court's ruling was a stipulated computation that the signers of the petition for annexation represented 58% of the area proposed for annexation if roads, streets, alleys and rights of way are excluded; but that they represented only 48% of the area if the public roads, streets, alleys and rights of way are "thrown on to the scale" in opposition to the annexation. On this point the trial court rules: "The total 'legal' signatures, as required by 139-11-8, C.R.S. 1953 represent less than 50% of the unincorporated area proposed to be annexed. If, however, the streets, alleys and roads (which constitute about 17% of the area) are excluded from the area in determining whether the petition was signed by the owners of more than 50% of the territory, the statutory requirement has been satisfied. The single legal issue to be determined is whether the streets, alleys and roads are to be included."

Although the trial court declared the attempted annexation void based upon the holding of this court in *City and County of Denver, et al., v. Board of County Commissioners of Arapahoe County, et al.,* 145 Colo. 451, 359 P.2d 1031, it is to be noted that that case affirmed an Arapahoe County Court judgment by operation of law on a three to three vote of this court, one justice not participating.

The statute, C.R.S. '53, 139-11-3, involved in this controversy, in pertinent part, reads as follows:

*"Proceedings initiated—when complete.*—Proceedings for annexation of territory eligible as defined in section 139-11-2 shall be initiated by a written petition pre-

sented to the legislative body of the city, city and county or incorporated town to which it is proposed to annex such territory, signed by the owners of more than fifty per cent of the area of such territory who shall also comprise a majority of the landowners residing in the territory at the time the petition is filed. * * *"

It is admitted that the majority of the landowners residing in the territory have signed the petition. We are, therefore, called upon to consider whether the words of the statute require an interpretation that compels computing the streets and alleys as being opposed to the annexation or whether the statute permits a construction that the streets and alleys are not properly part of the calculable area.

With reference to the construction of statutes, this court in *Kirschwing v. O'Donnell,* 120 Colo. 125, 207 P.2d 819, quoting with approval *Klench v. Board of Pension Fund Com'rs.,* 79 Cal. App. 171, 249 Pac. 46, said:

"If the meaning of the language as it was intended to be understood * * * be uncertain or doubtful, then a question of legislative intent is presented and that intention must be ascertained by a consideration of the language in connection with the context of the statute in which the language is employed in its entirety, the object which said statute was designed to attain, and the obvious consequences which would follow a construction either way."

In reading sections 139-11-3 and 139-11-8 together we find that "landowners" as used in the former are defined in section 8 as "owners in fee of real property in the territory to be annexed who have, the next preceding calendar year, become liable for property tax thereon." Logically, it appears that the requirements of ownership in fee and the liability for taxes are both prerequisites for participation as a proponent of the annexation. But the same requirements confront an opponent of the annexation. This is made clear in another section of the same article, 139-11-4, which pro-

vides for the giving of notice containing a statement that *landowners* of the area may express their opposition to the annexation and secure an election and by further providing that any counter petition shall be signed by persons "who would have been qualified to sign the petition for annexation."

In *Western Lumber and Pole Co. v. City of Golden,* 22 Colo. App. 209, 124 Pac. 584, the rule was stated to be that the interpretation of a statute the legislative purpose and the objects sought to be accomplished by the enactment are to be always borne in mind. And, it is not to be admitted that an unjust or unnatural consequence was contemplated by the legislature, unless this intention is too plain to admit of doubt. And the court should not adopt an interpretation, which produces absurd, unreasonable, unjust, or oppressive results, if such interpretation can be avoided.

In 50 Am. Jur. Statutes, Section 370, at page 377, it is stated that a construction should be avoided which renders the statute unfair or unjust in its operation, where the language of the statute does not compel such a result.

It appears that the legislative purpose and object in enacting article 11 was to afford landowners, as that term is defined in the statutes, an orderly opportunity to petition for annexation of their lands to a municipality if they can procure more than 50% of the persons who own more than 50% of the land sought to be annexed. It is not reasonable to assume or hold that the legislature intended to impose an additional burden or requirement upon the landowners in favor of annexation by requiring them to overcome, with their petition, the area which goes to make up the public streets, alleys and roads. Moreover, the construction of the statute which the county and the opponents of the annexation here seek would lead to an absurd, unjust, unreasonable and oppressive burden upon the fee owning, tax liable landowners in their quest for a legally acceptable an-

nexation petition. The stipulated figures show that the streets and public ways are of such width and length that they comprise 17% of the entire area as found by the court and as stipulated to by the parties. To adopt such an illogical interpretation is to assert that in excess of 60% of the private, tax liable, fee owned land in the area would be required in this case, and we can conceive of some cases where perhaps annexation could not be accomplished at all. To such view we cannot give sanction.

Because annexation statutes in various states are not uniform and differ radically from state to state, there is very little law to guide this court in its duty to carry out the intent of the legislative act. However, in a number of cases in other jurisdictions where attempts have been made to use the weight of publicly owned, tax exempt lands to defeat this or a comparable type of proceeding, courts have held against such use. *Annexation of Lots v. Mutual National Bank* (Ill. 1959), 163 N.E.2d 215 (Annexation); *Gorman v. City of Phoenix* (Ariz. 1953), 258 P.2d 424 (Annexation); *American Community Builders v Chicago Heights* (Ill. 1949), 85 N.E.2d 837 (Disconnection); *Heller v. Seal Beach* (Calif. 1958), 321 P.2d 97 (Annexation).

We hold, therefore, that the streets and public ways in the area are not to be included in calculating the area to be annexed.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in favor of the City and County of Denver and a decree declaring the annexation valid.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE SCHAUER concur in the result.

MR. JUSTICE FRANTZ dissents.

MR. JUSTICE FRANTZ dissenting:

Our function is adjudicative and not legislative. We

should be as zealous in guarding against an invasion by us of that which is properly the legislative domain as we are jealous of any attempt on the part of the legislative branch at usurping that which properly belongs to the judicial sphere. *Denver Bar Association v. Public Utilities Commission,* 154 Colo. 273, 391 P.2d 467. By the very nature of our office, we should be the first to recognize an activity of ours as impinging on the authority vested in another branch of government when such appears.

In restraining a department of government from exercising an authority constitutionally appertaining to another department, we wield an awesome but appropriate power because it is bestowed upon the judiciary by the Constitution of Colorado.

But what shall restrain us if we are not mindful of our circumscribed role in state government, and if we do not respect the distribution of powers among the "three distinct departments" as proclaimed in Article III of the Constitution? Our peculiar power induces self-restraint. A vigilant, dutiful judiciary should recognize its sphere of operation and readily restrain itself from any inchmeal intrusion on that which properly belongs to another branch of government.

It is within the sole province of the General Assembly to amend one of its enactments. When this Court amends an act of the legislature under the guise of interpretation, it trespasses upon an area of state action entrusted to the General Assembly alone.

Annexation is controlled by statute. Our General Assembly has discretionary power to determine the conditions and requirements under which annexation of territory to a municipality may be had. *Pueblo v. Stanton,* 45 Colo. 523, 102 Pac. 512. Courts may not expand, abridge, or revise these conditions and requirements. *City of Pass Christian v. Town of Long Beach,* 157 Miss. 778, 128 So. 554; *State ex rel. v. Texas City,* 157 Tex. 450, 303 S.W.2d 780.

There may be ambiguities in the annexation statute, but there are none in respect to the "area of the territory" as those words are used therein. To say that the area of the territory to be annexed, as it appears in context, is ambiguous and thus admits of a judicial construction is to do disservice to semantics — to make simple language seem complex. In so saying, and then following with a construction by which public ways are *excepted* in the computation of area, is judicial amendment of a legislative act, the exercise of a power not reposed in us.

In a case involving disconnection of a territory from a town, we recently said:

"To give effect to such construction would require the Court to indulge in judicial legislation. This we cannot do." *Littleton v. Wagenblast,* 139 Colo. 346, 338 P.2d 1025.

"Courts should be exceedingly careful to avoid" judicially legislating. *Denver City Tramway v. Kennedy,* 50 Colo. 418, 117 Pac. 167.. Judicial legislation "is beyond our lawful power." *Sheely v. Sheely,* 102 Colo. 194, 78 P.2d 378. The rule that words will be departed from where absurd results would follow from an adherence to the literalness of a statute does not justify a court in amending the statute or giving it a meaning to which its language is not susceptible, in order to avoid what the court believes are inequitable and unjust results. *Fullerton v. Lamm,* 177 Ore. 655, 163 P.2d 941; *State ex rel. Associated Indemnity Corp. v. Mortensen,* 224 Wis. 398, 272 N.W. 457, 110 A.L.R. 524; see *Morris v. Adams County,* 25 Colo. App. 416, 139 Pac. 582.

Annexation is a statutory proceeding. In this respect it may be likened to workmen's compensation. In answering a contention regarding certain matters that ought to be considered in a compensation claim, this Court wisely reminded that such was "a purely statutory proceeding," and that what was proposed involved

"legislative policy which probably can be answered only by express act of the General Assembly. The courts are not allowed to indulge in judicial legislation." *Industrial Commission v. Carpenter,* 102 Colo. 22, 76 P.2d 418.

C.R.S. '53, 139-10-3, commences thus:

"Proceedings for annexation of *territory* eligible as defined in section 139-10-2 shall be initiated by a written petition presented to the legislative body of the * * * city and county * * * to which it is proposed to annex such *territory,* signed by the owners of more than fifty per cent of the *area of such territory* who shall also comprise a majority of the landowners residing in the *territory* at the time the petition is filed." (Emphasis supplied.)

"Area of such territory" in itself is so transparent as to expose its very meaning. "Such territory" has an "area" and that is the area involved. Owners of more than fifty per cent of this area must sign. There is no room for excepting from the computation of area the public ways in the "area of such territory." Such is sheer "judicial amendment of a legislative act; this we are powerless to accomplish." *Jones v. People,* 155 Colo. 148, 393 P.2d 366.

"Area of such territory" means the surface of the land included within the described boundaries of such territory. We are dealing with a plane surface. See *State v. City of Polytechnic,* (Tex. Civ. App.) 194 S.W. 1136.

Other parts of the annexation statute make it luculent that public ways must be included in determining whether the required percentage of the area of the territory proposed to be annexed has been signed for. We enumerate:

(a) *Legal annexation involves a territory.* Several sections of the statute manifest the intention of the legislature that a surface intact is subject to annexation provided other conditions and requirements are present.

"*Territory* \* \* \* may be annexed to a \* \* \* city and county \* \* \*," provided the territory is eligible therefor as set out in C.R.S. '53, 139-11-1 (1960 Perm. Supp.). "*Territory* shall be eligible for annexation if such territory" per se fits certain requirements. C.R.S. '53, 139-11-2. "Proceedings for annexation of *territory* eligible as defined in section 139-11-2. "Proceedings for annexation of *territory* eligible as defined in section 139-11-2 shall be initiated by a written petition presented to the legislative body of the \* \* \* city and county \* \* \* to which it is proposed to annex *such territory. . . .*" C.R.S. '53, 139-11-3.

A notice must be given by the municipality which has favorably considered a petition for annexation, and among the items required to be mentioned therein is "a description of the territory included in the proposed annexation." C.R.S. '53, 139-11-4. "Landowners," as used in 139-11-3, "shall mean owners in fee of real property in the territory proposed to be annexed who have in the next preceding calendar year become liable for a property tax thereon . . ." C.R.S. '53, 139-11-8 (1960 Perm. Supp.). "[N]o other proceedings shall be commenced or prosecuted for the annexation or incorporation of the same *territory or any part thereof* until the question of annexing such territory in pursuance of such petition or consent shall have been finally disposed of . . ." (Emphasis supplied.) C.R.S. '53, 139-11-9.

(b) *Territory to be annexed must be bounded tract.* The statute makes it clear that the territory to be annexed must be within fixed boundaries, and that every square inch of land within those boundaries is a part of the territory.

Thus, C.R.S. '53, 139-11-2, provides that:

"Territory shall be eligible for annexation if such territory:

"\* \* \*

"(2) abuts upon or is contiguous to \* \* \* city and

county * * * to which it is proposed to be annexed in a manner which will afford reasonable ingress and egress thereto, provided that not less than one-sixth of the aggregate *external boundaries of the territory* proposed to be annexed must coincide with existing boundaries of the annexing municipality.

"* * *

"In determining territory eligible for annexation and *establishing boundaries of any territory* to be annexed, no territory owned by the same owner, whether consisting of one tract or parcel of real estate or two or more contiguous tracts or parcels of real estate, shall be divided into separate parts or parcels without the written consent of the owner thereof."

By C.R.S. '53, 139-11-3, requirement is made that "* * * the petition shall be accompanied by four copies of a map or plat, of such territory showing, with reasonable certainty, the territory to be annexed, *the boundaries thereof . . .*"

Although a digression, it should be noted that the maps or plats filed in the present case show within the boundaries thereof the public ways in question.

In the notice required to be given after a petition has been filed, the municipality is required to give "a description of the territory included in the proposed annexation."

(c) *Public ways are and must be part of the area of the territory to be annexed.* It seems to me that the legislature left nothing to conjecture in the passage of the annexation statute. As already shown, it indicated that the territory to be annexed is enclosed within boundaries. The legislature went further and by use of language demonstrated its awareness that streets would be part of territory to be annexed.

C.R.S. '53, 139-11-2, (the section built into 139-11-3), specifically contemplates inclusion of streets in any territory to be annexed, for it provides:

"Territory shall be eligible for annexation if such territory:

"* * *

"(3) Is otherwise qualified under this section but is noncontiguous solely because a *plotted street or alley, right of way, public or private,* or a lake, reservoir, stream or other waterway lies between the municipality and the territory supposed to be annexed;

"* * *

"(5) Is such that the noncontiguous boundaries thereof coincide with existing block lines, or *center lines of established streets, roads, highways, or alleys,* or with governmental subdivision lines for purposes of identification whenever this is possible." (Emphasis supplied.)

Manifestly, under either subsections (3) or (5) above, the one-half of the street located outside the annexing city would be annexed and would be included within the boundaries of the territory to be annexed, as those boundaries are required to be delineated by sections of the statute already quoted. If we read C.R.S. '53, 139-11-3, in connection with the immediately above quoted subsections (3) and (5), the phrase, "fifty per cent of the area of such territory," becomes meaningful when we refer it back to the phrase, "territory eligible as defined in section 139-11-2."

Of significance in showing the meaning of "more than fifty per cent of the area of such territory" is the language appearing in 193-11-4, which is as follows:

"* * * If such legislative body shall find that the counterpetition meets the requirements of sections 139-11-3 and 139-11-4, it may nevertheless approve the annexation by ordinance, but shall thereupon petition the county court of the county in which the *whole or larger area of such territory* for annexation is located . . ." (Emphasis supplied.)

Given the hypothetical problem of determining which county contained the larger area of a territory located in two counties, the only difference in the size of the

two areas depending upon the inclusion of a public way or ways, would not the beam of the scales be tilted in favor of that area which was larger by reason of the inclusion of the public way or ways?

(d) *Use of the terms "owners" and "landowners" indicates tax exempt properties as being included in area.* It should be remembered that C.R.S. '53, 139-11-3, requires signatures of "the *owners* of more than fifty per cent of the area of such territory who shall also comprise a majority of the *landowners* residing in the territory at the time the petition is filed." (Emphasis supplied.)

There is a distinction between the words "owners" and "landowners" as used in the statute. Landowners must be residents who are fee owners who have become liable for a property tax. C.R.S. '53, 139-11-8 (1960 Perm. Supp.) The difference in these classifications was pointed out in the recent case of *Rice v. Englewood,* 147 Colo. 33, 362 P.2d 557, in these words:

"There are two statutory requirements: First, the annexation petition must be signed by the owners of more than fifty per cent of the land area. * * * A second statutory demand is that the petition be signed by a 'majority of the landowners residing in the area at the time the petition is filed.' "

"Landowners" refers to owners liable for a tax, and "owners" includes those who own tax exempt property. Thus, churches, schools (both public and church related), public parks, public ways, and other properties which are tax exempt are part of the area of the territory because the statute requires that the petition for annexation must be "signed by the owners of more than fifty per cent of the area of such territory" who shall also comprise a majority of the landowners residing in the territory.

Under the law, title to public ways is in the county until such public ways are vacated, at which time title shall vest in abutting owners. C.R.S. '53, 120-1-1, and

C.R.S. '63, 120-1-1. Moreover, there is a stipulation in this case, in which the parties are in agreement, that the county owns the public ways within the territory sought to be annexed.

The only sequitur that can be drawn from the plain wording of the statute is that public ways owned by the county but enjoying a tax exempt status must be included in the consideration of what constitutes "the area of such territory" sought to be annexed.

The majority opinion in effect holds that the statute should be construed as providing that the petition for annexation must be "signed by the owners of more than fifty per cent of the area of such territory, but in computing what shall constitute such fifty per cent public ways shall be excepted . . .'"

Such a construction would violate fundamental, universal rules applicable to courts in determining the significance of statutes. We have already observed the constitutional bar to courts amending legislative acts. We would further observe that plain language, such as here employed, forbids the exception engrafted on the statute in question by this Court. *Denver v. Hobbs Estate,* 58 Colo. 220, 144 Pac. 874, Ann. Cas. 1916C, 823.

Perhaps no rule is more honored in the universality of its acceptance than that which ordains that courts should not read into statutes exceptions not made by the legislature. *Karoly v. Industrial Commission,* 65 Colo. 239, 176 Pac. 284; *Stockton Theatres v. Palermo,* 47 Cal.2d 469, 304 P.2d 7; *State of Minnesota v. Tennyson,* 212 Minn. 158, 2 N.W.2d 833, 139 A.L.R. 987; *State v. Hamilton,* (Okla. Crim.) 298 P.2d 1073; *State ex rel. v. Ellsworth,* 59 Wyo. 288, 139 P.2d 744.

We should heed this language, taken from the case of *State of Minnesota v. Tennyson, supra.*

"* * * It is for the legislature and not the court to create exceptions, if there are to be any. Where a statute is couched in broad and comprehensive language admitting of no exceptions, the court is not justified

in engrafting thereon exceptions, *however much it may deem the public welfare to require them."* (Emphasis supplied.)

Equally cogent and applicable is the reasoning of the Supreme Court of California in the case of *Stockton Theatres v. Palermo, supra.*

"The general rule is that a court is not authorized in the construction of a statute, to create exceptions not *specifically* made. If the statute announces a general rule and makes no exception thereto, the courts can make none." (Emphasis supplied.)

It may be argued that the courts can imply an exception. But there are no implied exceptions to a legislative enactment. Implied exceptions to legislation are verboten. *Garnet Ditch & Res. Co. v. Sampson,* 48 Colo. 285, 110 Pac. 79; *Spears v. City of San Antonio,* 110 Tex. 618, 223 S.W. 166. See *Hart Co. v. Burton,* 133 Colo. 482, 297 P.2d 267.

During the last several years cases have been before this Court involving the question of whether public ways and places shall constitute part of the area of an annexation for the purpose of determining the sufficiency of compliance with the statute. It would have been easy for the legislature to have specifically enacted the exception which this Court would now engraft on the act. Failure of a legislative body to change the statute under such circumstances has special significance in its construction. *Safeway Stores v. Bowles,* 145 F.2d 836, cert. den 65 S.Ct. 683, 324 U.S. 847, 89 L.Ed. 1408, and 65 S.Ct. 684, 324 U.S. 847, 89 L.Ed. 1408; *Kusior v. Silver,* 54 Cal.2d 603, 354 P.2d 657; *Bay Creek Lbr. & Mfg. Co. v. Cesla,* 213 Ore. 316, 324 P.2d 244.

Cases cited in the majority opinion, said to except public ways from area, will not furnish solace for what this Court is here doing. They are, in my opinion, inapplicable to a statute using the langauge which is to be found in our annexation statute.

With due deference to the majority, I cannot agree

with their opinion, for it violates the Constitution and all the applicable precepts which guide courts in their consideration of statutes.