QUESTION: Should the City of Pompano Beach include publicly owned land in calculating the number of landowners required to petition for integration of a parcel of land or group of parcels into the city pursuant to Ch. 59-1764, Laws of Florida, as subsequently amended?
SUMMARY: Until legislatively or judicially determined to the contrary, publicly owned land within the area to be annexed pursuant to s. 233.9, Charter of the City of Pompano Beach, should not be calculated in determining the owners of not less than 51 percent of the individual parcels or group of parcels to be integrated into and made a part of the City of Pompano Beach. Chapter 59-1764, Laws of Florida, as subsequently amended (s. 233.9, Charter of the City of Pompano Beach), describes fifty-five parcels of land which may be integrated into the City of Pompano Beach. Generally, the procedure by which such integration is achieved requires a petition "of the owners of not less than fiftyone (51%) percent of the area of the individual parcel or group of parcels to be integrated into and made a part of the said municipality." The term "owners" is not defined. Thus, you inquire as to whether publicly owned land, e.g., roads, streets, highways, public parks, public schools, etc., should be included when calculating the number of owners required to petition for integration under this charter provision. No Florida case has been discovered which is determinative of your question. Moreover, what authority there is from other jurisdictions must be viewed in the light that municipal annexation procedures in the various states are not uniform and differ radically from state to state. Keeping this in mind, however, the case which involves a factual situation most similar to the instant situation is City and County of Denver v. Holmes, 400 P.2d 901 (Col. 1965), in which a municipal annexation was challenged on the ground that the petition for annexation was not signed by the owners of more than 50 percent of the territory to be annexed, as statutorily required. The plaintiff argued that the annexation statute compelled computing streets and alleys as part of the territory to be annexed in calculating the number of owners required to sign the petition. Owners was defined in the statute as "owners in fee of real property in the territory proposed to be annexed who have in the next preceding calendar year, become liable for a property tax thereon." (Emphasis supplied.) [See] C.R.S. 1953, 139-11-8. The Colorado Supreme Court held that the foregoing definition of owners, when construed together with the legislative intent to afford such persons an orderly opportunity to petition for annexation, required the exclusion of tax-exempt public streets, alleys, and roads from the calculation of the number of owners required to petition. The court stated that It is not reasonable to assume or hold that the legislature intended to impose an additional burden or requirement upon the landowners in favor of annexation by requiring them to overcome, with their petition, the area which goes to make up public streets, alleys and roads. Moreover, the construction of the statute which the county and the opponents of the annexation here seek would lead to an absurd, unjust, unreasonable and oppressive burden upon the fee owning, tax liable landowners in their quest for a legally acceptable annexation petition. The stipulated figures show that the streets and public ways are of such width and length that they comprise 17% of the entire areas as found by the court and as stipulated to by the parties. To adopt such an illogical interpretation is to assert that in excess of 60% of the private tax liable, fee owned land in the area would be required in this case, and we conceive of some cases where perhaps annexation could not be accomplished at all. To such view we cannot give sanction . . . . [See] 400 P.2d at pp. 903-904. The opinion concluded by citing authorities from other jurisdictions to the effect that where attempts have been made to use the weight of publicly owned, tax exempt lands to defeat this or a comparable type of proceeding, courts have held against such use. Id. See International Paper Co. v. Fond du Lac,184 N.W.2d 834 (Wis. 1971); Annexation of Lots 1 to 37, etc. v. Mutual National Bank, 163 N.E.2d 215 (Ill.App. 1959); Gorman v. City of Phoenix, 258 P.2d 424 (Ariz. 1953); American Community Builders v. City of Chicago Heights, 85 N.E.2d 837 (Ill.App. 1949); Heller v. City Council of City of Seal Beach, 321 P.2d 97
(Cal.App. 1958). As previously noted, the factual situation in City and County of Denver v. Holmes, supra, and similar cases from other jurisdictions, can be distinguished from the instant situation. However, as is the rule in other jurisdictions it has been held in Florida that the presence of publicly owned, tax-exempt land should not be used to defeat annexation or comparable proceedings. See Hall v. State ex rel. Ervin,46 So.2d 878 (Fla. 1950). In addition, such reasoning has been applied in previous opinions of this office. For example, in AGO 074-61 it was concluded that the presence of a governmentowned state road and canal right-of-way between a city and territory sought to be annexed does not, per se, prevent annexation of the territory by a city. Cf. AGO's 072-282 and 071-245. More significant for the purposes of this opinion, it was ruled in AGO 072-304 that, in determining the number of owners required to object to rezoning under s. 176.06, F.S. 1971, repealed by Ch. 73-129, Laws of Florida — i.e., generally, "the owners of twenty percent or more of the area of the lots included in such proposed change" — municipally owned property should be excluded from the calculation. It was expressed therein that inclusion of the city-owned property would dilute the effectiveness of the petitioners' objections to rezoning; and, where a considerable portion of the area to be rezoned was city-owned property, its inclusion could deprive the petitioners altogether of the benefit of the statute. Likewise, in the instant situation, the existence of publicly owned property within the area to be annexed should not be used to defeat annexation. To assert that the charter provision in question requires a petition from the owners of a greater percentage than 51 percent of the private, tax-liable land in the parcel or parcels to be annexed would be unreasonable, since such requirement would increase the annexation obstacles for persons who will eventually pay municipal taxes and, presumably, benefit the most from the annexation. Moreover, as was stated in City and County of Denver v. Holmes, supra, and in AGO 072-304, it is not inconceivable that the inclusion of publicly owned property in the required calculation here would deprive private landowners altogether of their opportunity to be annexed. Thus, in order to avoid an illogical and unreasonable result, see State ex rel. Hughes v. Wentworth, 185 So. 357 (Fla. 1938), I am of the opinion that, until this question should be legislatively or judicially determined to the contrary, publicly owned land within the area to be annexed pursuant to the charter provision in question should not be calculated in determining the owners of not less than 51 percent of the individual parcels or group of parcels to be integrated into and made a part of the City of Pompano Beach.