Evelyn Marie HALVERSON,
Plaintiff–Appellant,

v.

PIKES PEAK FAMILY COUNSELING AND MENTAL HEALTH CENTER, INC.; d/b/a The Crisis Center; Pamela L. King, counselor thereof; Debra Amesbury, clinical director thereof; Harold Taylor, supervisor thereof; and John Doe and other persons unknown as agents of Pikes Peak Family Counseling and Mental Health Center, Inc., jointly and individually, Defendants–Appellees.

No. 88CA1617.

Colorado Court of Appeals,
Div. IV.

Jan. 25, 1990.

Rehearing Denied Feb. 22, 1990.

Certiorari Stricken Aug. 20, 1990.

The Law Offices of John B. Ciccolella, P.C., John B. Ciccolella, Elvin L. Gentry, P.C., Elvin L. Gentry, Colorado Springs, for plaintiff-appellant.

Meinhold and Maldonado, Margaret M. Maldonado, Colorado Springs, for defendants-appellees.

Opinion by Judge NEY.

In this negligence action against the Pikes Peak Family Counseling and Mental Health Center, Inc., plaintiff, Evelyn Marie Halverson, appeals from a judgment granting defendant's C.R.C.P. 12(b) motion to dismiss her complaint for failure to state a claim. We reverse and remand with directions to reinstate plaintiff's complaint.

Plaintiff's complaint alleges that, while she was an inpatient at the Center, she was sexually assaulted by another patient there with a history of violent behavior. Plaintiff asserts that defendants were negligent in failing to protect her and in failing to supervise and control the attacker after defendants had notice of the attacker's violent propensities towards plaintiff.

The single issue on appeal is whether the district court erred in dismissing plaintiff's complaint for failure to state a claim upon which relief can be granted based upon the provisions of § 13–21–117, C.R.S. (1987 Repl.Vol. 6A). That statute provides:

"No physician, social worker, psychiatric nurse, psychologist, or other mental health professional and *no mental health hospital*, community mental health center or clinic, institution, or their staff *shall be liable* for damages in any civil action for failure to warn or

protect any person against a mental health patient's violent behavior, nor shall any such person be held civilly liable for failure to predict such violent behavior, *except where the patient has communicated to the mental health care provider a serious threat of imminent physical violence against a specific person or persons.* When there is a duty to warn and protect under the circumstances specified above, the duty shall be discharged by the mental health care provider making reasonable and timely efforts *to notify* any person or persons specifically threatened, as well as notifying an appropriate law enforcement agency *or* by taking *other appropriate action* including, but *not limited to, hospitalizing the patient. . . .* The provisions of this section shall not apply to the negligent release of a mental health patient from any mental hospital or ward or to the negligent failure to initiate involuntary seventy-two-hour treatment and evaluation. . . ." (emphasis added)

## I.

▮ Plaintiff initially contends that the immunity conferred by § 13–21–117 is inapplicable to acts of hospitalized patients, and that the statute was intended only to provide immunity for a health care provider's failure to warn or protect others against potential violent behavior of outpatients over whom the provider maintains no control. We disagree.

The statute contains no words suggesting such a limitation upon its application. It expressly extends immunity to mental health hospitals, community mental health centers or clinics, and their staff members who fail to warn or protect others against a mental health patient's violent propensities, tendencies, or generalized threats of potential violence. Had the General Assembly intended the statute to apply only to outpatients, it could have used the words "a mental health outpatient's" instead of "a mental health patient's" in defining the scope of the immunity conferred.

If, as here, the language of a statute is clearly expressed, we need not resort to rules of statutory construction or extrinsic indicators, such as legislative history, to determine legislative intent. *See Humana, Inc. v. Board of Adjustment,* 189 Colo. 79, 537 P.2d 741 (1975); *Lassner v. Civil Service Commission,* 177 Colo. 257, 493 P.2d 1087 (1972).

## II.

▮ Plaintiff next contends that, even if § 13–21–117 applies to conduct of hospitalized inpatients, the allegations of the complaint were sufficient to state a claim. We agree.

The introductory clause of the first sentence of § 13–21–117 grants immunity from liability to health care providers for their failure to warn others of a patient's dangerous propensities or his generalized threats of violence against unspecified persons. However, the last clause of that sentence limits the grant of immunity by excepting those instances involving a patient's communication to the health provider of a serious threat of imminent physical violence against a specified person or persons, thus recognizing and imposing a duty upon the health care provider under those circumstances.

The second sentence of § 13–21–117 confirms the legislative recognition of the remaining duty, and delineates how a health care provider may satisfy or discharge that duty to warn or protect those against whom specific threats have been communicated. That sentence provides that the duty to warn or protect may be discharged by reasonable and timely efforts to notify the person or persons threatened, by notifying an appropriate law enforcement agency, or by "taking other appropriate action including, but not limited to hospitalizing the patient."

If, as here, specific threats directed against another who is accessible to an already hospitalized patient are communicated to a health care provider, then mere continued hospitalization may not be sufficient to discharge the health provider's duty to warn or protect the threatened

person. Plaintiff's complaint alleges that "the institutional defendants new (sic) or should have known that [the alleged rapist] had ... [engaged in] prior aggressive behavior toward [plaintiff] and, in fact, the institutional defendants were aware of same and of prior conduct exhibited by [the alleged rapist] toward [plaintiff]." ·

This allegation, if true, would bring plaintiff's claim within the exception provided in § 13–21–117. In addition, the allegation is sufficient to raise the issue whether defendants discharged their duty to warn or protect by making reasonable and timely efforts to warn or otherwise protect Halverson against the threatened harm of which they were aware by virtue of the communicated threats.

When relying on a motion to dismiss a complaint pursuant to C.R.C.P. 12(b), for failure to state a claim, the allegations made in the complaint must be viewed in a light most favorable to plaintiff. Factual allegations made in the complaint must be deemed to be true. *Bell v. Arnold,* 175 Colo. 277, 487 P.2d 545 (1971).

Viewed in this light, we conclude that plaintiff's complaint was sufficient to state a claim upon which relief could be granted and that the trial court erred in ruling to the contrary.

### III.

The record before us consists only of plaintiff's complaint and briefs of counsel that focus narrowly on the relationship between the alleged rapist and the defendants. The complaint contains allegations which might support a claim based upon a duty owed by defendants to plaintiff by virtue of her own alleged special relationship with the hospital. *See Felger v. Board of County Commissioners,* 776 P.2d 1169 (Colo.App.1988). However, because of the limited record before us and the focus of the parties' argument, we decline to address that issue.

The judgment is reversed, and the cause is remanded with directions to reinstate plaintiff's complaint.

HUME, J., concurs.

CRISWELL, J., specially concurs.

Judge CRISWELL specially concurring.

While I agree with the majority that the judgment of the district court must be reversed, I do not agree with the conclusion reached in Part I of the majority's opinion that § 13–21–117, C.R.S. (1987 Repl.Vol. 6A) affects the liability of a hospital to an inpatient for the violent acts of another inpatient. In my view, that statute is inapplicable to the factual circumstance described in plaintiff's complaint. Thus, I concur in the judgment of reversal only.

I recognize that a statute must be interpreted to ascertain the intent of the legislative body that adopted it, and if its language is clear, a court must give effect to the words as written. However, the issue whether statutory language is clear cannot always be determined merely by focusing upon the words of the statute alone.

In order to ascertain the intended meaning of a statute, it is proper, I submit, to examine not only the words used in the statute itself, but to consider, as well, the problem that the statute was designed to address. In addition, other legislative pronouncements on the same subject may be considered and read together with the disputed statute so as to carry out the beneficent purposes of both. *See People in Interest of M.K.A.,* 182 Colo. 172, 511 P.2d 477 (1973); *Eugene Cervi & Co. v. Russell,* 31 Colo.App. 525, 506 P.2d 748 (1972), *aff'd,* 184 Colo. 282, 519 P.2d 1189 (1974).

Further, it must be presumed that the statute was intended to produce a just and reasonable result. *Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985). A statute may not be interpreted so as to produce an unreasonable or absurd result, unless its language will admit of no other possibility. *Denver v. Holmes,* 156 Colo. 586, 400 P.2d 901 (1965).

Application of these precepts to § 13–21–117 convinces me that this statute was not intended to apply to claims arising from injuries caused by a person who has been committed as an inpatient pursuant to

§ 27–10–101, et seq., C.R.S. (1982 Repl.Vol. 11).

As pertinent here, the statute provides that no hospital "shall be liable ... for failure to warn or protect any person" from the actions of a *"mental health patient,"* unless that mental health patient has communicated a "threat of imminent physical violence against a specific person...." (emphasis supplied)

However, if a duty to warn or protect arises under the circumstances described by the statute, "the duty shall be discharged" either by making efforts to notify that other person, as well as notifying law enforcement agencies, *"or* by taking other appropriate action including, but not limited to, *hospitalizing* the *patient."* (emphasis supplied)

Finally, the statute creates two exceptions to the general rule of non-liability. If the mental health care provider negligently *releases* an inpatient "from any mental hospital or ward," or if the provider negligently fails to *initiate* involuntary commitment procedures, after evaluating the patient and determining that the patient "appears to be an imminent danger to others," the statute has no applicability to any claim that might be based upon such actions.

The narrow question of interpretation presented for our consideration is whether the term, "mental health patient," as used by this statute, includes all persons to which it might literally apply or only those patients who have not yet been "hospitalized." The majority adopts the broadened definition; my consideration of the question convinces me that the General Assembly intended only the more restricted one.

Before this statute was adopted, the nature of the duty owed to a third party by a mental health care provider depended upon the status of the provider's patient. In *Perreira v. Colorado,* 768 P.2d 1198 (Colo. 1989), for example, the supreme court noted that the varying common law standards that had been adopted depended for their applicability upon whether the person committing the violence was receiving treatment as an outpatient, as a voluntary inpatient, or as an involuntary inpatient. These differing standards were grounded upon the varying degrees of control over the patient that the mental health care provider could reasonably be expected to exert.

Thus, in the case of an outpatient, because the health care provider has, at best, only a minimal degree of control over the patient's actions, the provider had a common law duty to warn or to protect a third party only in those instances in which the patient had identified that third party as a target. *Brady v. Hopper,* 570 F.Supp. 1333 (D.Colo.1983), *aff'd,* 751 F.2d 329 (10th Cir.1984) (applying Colorado law).

In contrast, because a health care provider has a greater degree of control over an involuntary inpatient, he had a common law duty to protect even unidentified third parties from such patient's actions. *See Perreira v. Colorado, supra* (decided after adoption of statute, but based upon incidents occurring before its adoption). *See generally* Annot., *Liability of One Releasing Institutionalized Mental Patient for Harm He Causes,* 38 A.L.R.3d 699 (1971).

Moreover, testimony on the bill that became § 13–21–117 informed the members of the General Assembly of the nature of these differing standards. *See* Tape Recording of Testimony before the House Education Committee on H.B. 1201 on February 5, 1986.

It seems to be conceded, even by the members of the mental health care profession who aided in the initial drafting of the bill, that the statute, both in its statement of the general rule and in its later exceptions, was intended merely to codify the common law rules adopted in *Brady* and by other courts. *See Dice, The Duty to Warn and the Liability of Mental Health Care Providers,* 16 Colo.Law. 70 (January 1987).

The statute's principal purpose, therefore, was not to change the nature of the duty owed by such providers. Rather, the statute sought to protect such providers by specifying the steps that they could take to fulfill their duty to third parties in those instances in which a duty to warn or to protect exists. And, this purpose was served by the statute's declaration that the

mental health care provider's duty could be performed *either* by giving appropriate notice to the third party *"or"* by taking other appropriate steps, including *"hospitalization." Dice, supra.*

Hence, consideration of the nature of the problem that the legislation was intended to address justifies the dictum in footnote 8 of *Perreira* that § 13–21–117 "is ·instructive at least as to the duty of a psychiatrist in treating *a voluntary outpatient."* (emphasis supplied)

In addition, the last sentence of this statute, which refers to involuntary treatment and evaluation, necessarily directs our attention to the statute providing for such treatment and evaluation. That statute requires involuntary hospitalization of a patient if the patient represents a danger to others, even if those others are *not* identified. Section 27–10–105, C.R.S. (1989 Repl. Vol. 11B); *Dice, supra.* And, if a mental health care provider negligently fails to cause an outpatient to be committed under this statute, § 13–21–117 is by its express terms inapplicable to any claim based on that failure. *See Perreira v. Colorado, supra.* Similarly, if an involuntary inpatient is negligently released and injures a previously unidentified third party, § 13–21–117 assures that the common law rule of *Perreira* will continue to apply.

Finally, as I interpret § 13–21–117, it is intended that a mental health care provider can fulfill any duty created by its terms *either* by giving appropriate notice of the threat, *or* by "hospitalizing the patient," *or* by taking other appropriate steps. Contrary to the majority's conclusion, I am convinced that the statute does not impose a duty upon such a provider both to warn the third person *and* to take *other* appropriate steps to protect him. *See Dice, supra.*

If I am correct in this latter conclusion, moreover, the interpretative inclusion of an involuntary inpatient within the term "mental health patient" leads to an unreasonable and illogical result.

I reject the notion that it was intended that a mental health care provider, knowing of a specific threat. by one inpatient against another, can fulfill any statutory duty owed merely by notifying the intended victim of the threat and informing the local constabulary. It is, after all, the very purpose of hospitalization of a potentially violent patient to prevent injury to others. And, this is accomplished by restricting the violent patient's freedom of action, not by warning other patients to protect themselves from him! *See* § 27–10–101, et seq., C.R.S. (1989 Repl.Vol. 11B).

Further, to interpret the statute as not applying when a mental health care provider is evaluating a person to determine whether he should be hospitalized, or when he is considering whether the inpatient should be released from hospitalization, but as applying during his interim hospitalization, would likewise lead to an unreasonable and illogical result. I cannot conclude that the General Assembly intended to impose such an unequal duty upon mental health care providers.

Hence, considering the specific problem that this legislation was intended to address, its legislative history and underlying purpose, its relationship to other statutes upon the same subject, as well as the results that would flow from any contrary interpretation, I am of the view that the term "mental health patient" as used in § 13–21–117 refers only to an outpatient, not to an involuntarily committed inpatient. Consequently, while I agree that the trial court's judgment must be reversed and that this matter must be remanded to it for further proceedings, I would specifically advise that court that § 13–21–117 is inapplicable to this controversy.