### No. 26552

**Humana, Inc. (formerly known as Extendicare, Inc.) and Humana of Colorado, Inc. (formerly known as Extendicare of Colorado, Inc.) v. Board of Adjustment of the City of Lakewood, Colorado and The City of Lakewood, Colorado, a municipal corporation — Anthony A. Johnson, Lynne G. Johnson, Mid-Lakewood Civic Association, Don A. Johannes, Barbara A. Johannes, James W. Moore, Lucille R. Moore, James W. Donaldson, Wayland H. Lanning, Elizabeth T. Lanning and W. Richard Evarts**

(537 P.2d 741)

Decided June 23, 1975.                                    Rehearing denied July 1, 1975.

Holland & Hart, John S. Castellano, for plaintiffs-appellants.

Raymond C. Johnson, David A. Solomon, for defendants-appellees.

Saunders, Snyder & Ross, P.C., William J. Kirven, III, for intervenors-appellees.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We are here concerned with the interpretation of the zoning ordinance of the city of Lakewood (Lakewood) as it applies to a general care hospital.

This is an appeal by Humana, Inc., and Humana of Colorado, Inc., plaintiffs-appellants (Humana) from a judgment of the District Court of Jefferson County affirming a ruling of the Lakewood Board of Adjustment (Board). The city of Lakewood was joined as a party defendant and is an appellee here. The intervenors-appellees are a group of citizens who reside in the vicinity of the property on which Humana seeks to build a general hospital and who are protesting the construction of a hospital. Appellees will be referred to by name or collectively as "the City," unless the context indicates otherwise.

Humana, in its search for a suitable site to construct a general hospital, located a 16-acre site (the site) in an agricultural one (A-1) district. Humana inquired of Jesse Miller, Lakewood Zoning Administrator (Administrator), and Gary Latham, Director of the Department of Community Development, as to whether a general hospital was a permissible use in the A-1 district. Upon receiving an affirmative reply, Humana purchased the site for $450,000.

A building permit application to the city of Lakewood for a 200-bed hospital was submitted by Humana. The zoning portion of the application was approved by the Administrator which, in effect, certified that a hospital could be built on the site. Pending approval by the engineering department and the building department, one of the intervenors applied to the Board for an interpretation of the use provision of the A-1 district.

On February 20, 1973, the Board held a hearing, reversed the interpretation of the Administrator, holding that a general hospital is not a permitted use in an A-1 district.

On March 12, 1973, Humana filed in the district court (1) a petition for writ of certiorari to review the Board's ruling, (2) a complaint for declaratory judgment challenging the constitutionality of the ordinance as interpreted by the Board, and (3) a general complaint alleging the doctrine of equitable estoppel and praying for an injunction. It was at this point that a number of persons in the vicinity of the site, including the person who asked for the review by the Board, sought and were granted permission to intervene.

Although arguments on the several issues were ably presented in the respective briefs of the parties, our conclusion, that by definition a general hospital is a permissible use in the A-1 district, obviates the necessity to decide the other issues. The sole issue, as we perceive it, is whether, under the terms of the ordinance, a general hospital is a permissible use in the A-1 district.

We purpose to determine what the "legislative intent" of the City Council was in using the following language to regulate the use of land as it pertains to health care facilities within the agricultural one (A-1) district:

"6. Hospitals and sanitariums for mentally disturbed or defectives or for contagious or infectious diseases."

Humana urges the application of the Doctrine of the Last Antecedent. The issue, of course, revolves around the question of whether the phrase "for mentally disturbed or defectives or for contagious or infectious diseases" modifies both "sanitariums" and "hospitals." The Zoning Administrator ruled that it modified "sanitariums," but the Board of Adjustment held that it also modified "hospitals." The City contends that the natural construction of the language demands that the clause be read as modifying both.

Humana argues that such an interpretation is contrary to the doctrine of the last antecedent as expressed in our decisions:

"'relative and qualifying words and phrases where no contrary intention appears, will be construed to refer *solely* to the last antecedent with which they are closely connected.' *Wheeler v. Rudolph*, 162 Colo. 410, 415, 426 P.2d 762 (1967)."

The City counters with the contention that:

". . . Plaintiffs' attempt to invoke the 'doctrine of last antecedent' is unwarranted and violates the admonition of the Supreme Court in *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (1973):

'Ordinarily, words and phrases found in statutes are to be construed according to their familiar and generally accepted meaning. Forced, subtle, strained or unusual interpretation should never be resorted to where the language is plain, its meaning is clear, and no absurdity is involved.' *Lidke v. Ind. Comm.*, 159 Colo. 580, 413 P.2d 200; *Jones v. Board*, 119 Colo. 420, 204 P.2d 560.''

█ We think both rules are valid *aids* in attempting to resolve the meaning of ambiguous language, but we are not limited to a consideration of these two rules alone. Other aids may be employed to determine the intended meaning of the words employed. In construing a section of a legislative act, it is fundamental that the whole of the act must be read and considered in context. *Public Util. Comm'r v. Stanton Transp. Co.*, 153 Colo. 372, 386 P.2d 590 (1963); *Clark v. Fellin*, 126 Colo. 519, 251 P.2d 940 (1952).

█ In order to construe the ordinance "according to [its] familiar and generally accepted meaning," as suggested by the City, we must look to testimony on the subject as well as to other provisions of the zoning ordinance. Dr. Roy L. Cleere, a retired public health physician and executive director of the Colorado Department of Health for some 30 years, who was a witness for both the appellants and the appellees, testified that there are two kinds of hospitals presently being licensed by the Department of Health, general hospitals and psychiatric hospitals; that there are not in Colorado any hospitals known "as hospitals for contagious and infectious diseases only"; and, that

"the last contagious disease hospital . . . was Steel Hospital . . . for the City and County of Denver, located on Denver General grounds.

There used to be quite a few contagious disease hospitals in Colorado."

The Steel Hospital was closed eight to ten years ago. Also, according to the testimony, in the past there were several tuberculosis hospitals and sanitoriums in the state. Swedish Hospital in Englewood, for instance, started as a tuberculosis sanitorium but has been a general hospital for many years.

■ The testimony of the Zoning Administrator, who dealt with the zoning ordinance on a day to day basis, is significant. He stated that he looked at the ordinance; that he was also aware that five other zone districts contained provisions relating to health facilities, but that all except A-1 prohibited institutions for mentally disturbed or defectives or for contagious or infectious diseases; that the ordinance recognized two classes of hospitals — general and special; and, finally, that the special hospitals was the more restricted category and general hospitals was the less restricted category.

The Administrator explained his reasoning process in this fashion:

"I used the example, R-3, which would allow twenty-one units per acre, . . . we could not deny an individual establishing and building ten units per acre. . . . [I]t was my conclusion that at the time that if you could have a hospital for mentally disturbed, infectious and contagious diseases, that you could have a hospital of lesser intensity use."

A search of the statutes discloses that there are no provisions for the licensing of hospitals "for mentally disturbed or defectives or for contagious or infectious diseases." Dr. Cleere testified, however, that the department of health has regulations governing hospitals who have patients with contagious or infectious diseases, and that, although there are psychiatric hospitals (mostly state operated) for the care and treatment of "mentally disturbed and defectives," general hospitals also have psychiatric facilities.

Turning now to the Lakewood ordinance, we find health care facilities provided for specifically in three zone districts other than A-1. Additional zones permit similar uses by reference. The manner in which institutions for the mentally disturbed, mentally defective or for contagious and infectious diseases are treated in these districts is indicative of the meaning intended to be conveyed by the uses of the qualifying language in the A-1 district.

The language which the drafters employed to describe the uses permissible in each of the three zones supports the testimony of the Administrator. From this language emerges a clear and unambiguous intent that facilities for the mentally disturbed or defectives and for contagious and infectious diseases be treated as a classification separate and distinct from all other health care facilities, particularly general hospitals.

Residential Three A District (R-3A) permits land and buildings to be used for

"Homes for the aged, nursing homes (but not including facilities for mentally disturbed or defectives), . . . ."

Residential Four (R-4) permits land and buildings to be used for

"Hospitals, nursing homes and clinics, but not including institutions exclusively for the mentally disturbed, mental defectives or for contagious or infectious diseases."

Restricted Commercial One District (RC-1) permits land and buildings to be used for

"Homes for the aged, nursing homes, hospitals (but not including hospitals for mentally disturbed or defective, contagious or infectious diseases)."

The emphatic manner in which the ordinance provisions divide facilities which are to be used exclusively for the mentally disturbed, mental defectives or for contagious or infectious diseases from all other types of health facilities strongly compels the conclusion that the intent of the drafters of the ordinance was to limit this kind of institution to the A-1 district, while permitting general hospitals to be constructed in the several districts, including A-1.

■ Considering the use of the qualifying language, as it appears in the use provision in A-16, and in the context of the whole zoning ordinance, and in light of the testimony, we conclude that the doctrine of last antecedent should be applied in construing the provisions of the ordinance in issue here. *Wheeler v. Rudolph, supra; Moschetti v. Liquor Lic. Auth.*, 176 Colo. 281, 490 P.2d 299 (1971). We, therefore, hold that a general hospital is a permissible use in an A-1 district.

The judgment is reversed and the cause remanded to the district court for further proceedings not inconsistent with the views expressed herein.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE HODGES, and MR. JUSTICE LEE dissent.