**KENNETH M. GOOD IRREVOCABLE TRUST, Appellant,**

v.

**Orlyn J. BELL, Division Engineer, Water Division No. 5, Colorado, Appellee.**

No. 87SA183.

Supreme Court of Colorado,
En Banc.

July 18, 1988.

Saunders, Snyder, Ross & Dickson, P.C., Melvin B. Sabey, David C. Hallford, Denver, for appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wendy C. Weiss, First Asst. Atty. Gen., Denver, for appellee.

ERICKSON, Justice.

This appeal is from a partial summary judgment, which dismissed part of the application of Kenneth M. Good Irrevocable Trust (Good) for a conditional water right. Summary judgment was granted because Good had not satisfied the requirements of section 37–92–302(2), 15 C.R.S. (1986 Supp.), to secure a hearing on the merits of his application for a conditional water right. Good failed to construct a well before its well permit expired, as required by section 37–92–302(2) to obtain a decree for a conditional water right. We affirm.

I.

On December 28, 1979, Gene Mulvihill (Mulvihill), the predecessor in interest to Good, filed an application in Water Division No. 5 for a conditional water right.[1] The application was to be perfected by drilling two wells in Garfield County, Colorado, Cactus Valley wells one and two, with priority dates of June 1, 1978. The wells would draw water from the alluvium of the Colorado River. Luther and Elizabeth Lewis (Lewis), the owners of a nearby well, filed a statement of opposition to Mulvihill's application.

Two well permits were issued by the state engineer on September 13, 1979. As required by section 37–92–302(2), Mulvihill supplemented his application with the well permits, which had an expiration date of September 13, 1980.[2] Well one was com-

---

1. "'Conditional water right' means a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 15 C.R.S. (1973). The purpose of a conditional water decree is to permit the priority date of an appropriation of water to relate back to the time of the "first step" toward that appropriation. *Lionelle v. Southeastern Colo. Water Conservancy Dist.*, 676 P.2d 1162 (Colo.1984). The "first step" consists of two prongs: (1) the formation of an intent to appropriate a definite quantity of water and put it to a beneficial use, and (2) an overt manifestation of that intent through physi-

cal acts sufficient to constitute notice to third parties. *Id.* at 1168.

2. Section 37–92–302(2) provides:

In the case of applications [for a determination of a water right and a conditional water right, and for approval of a change of water right or plan of augmentation] which will require construction of a well, other than applications for determinations of rights to ground water from wells described in section 37–90–137(4), no application shall be heard on its merits by the referee or water judge until the application shall be supplemented by a permit or evidence of its denial by the state

pleted before its permit expired; well two was never completed. No extension of the permit for well two was requested under section 37–90–137(3)(a)(I), 15 C.R.S. (1986 Supp.), before the permit expired.

Good acquired Mulvihill's interest in the wells and filed a motion in limine seeking to limit the issues at trial to whether there was an intent to appropriate water from both wells and an overt act establishing that intent. The Lewises moved for summary judgment asserting that Good had not fulfilled the requirements of section 37–92–302(2) since the well permits had expired before the hearing on Good's application.

By order dated September 19, 1986, the water court granted Good's motion in limine with respect to well one and limited the proof required at the adjudication of that part of Good's application. The court, however, granted Lewises' motion for summary judgment concerning well two because the well had not been completed before its well permit expired. The water judge concluded that, under section 37–92–302(2), a valid well permit was a prerequisite to a hearing on the merits of the application for a conditional water right. The judge stated:

A reading [of] the statutes governing underground water and C.R.S. 37–92–302 lead this Court to the conclusion that the legislative intent was to insure that appropriators of underground water complied with the provisions of C.R.S. 37–90–137 with regard to wells. That is, that appropriators made application for well permits and either had a well constructed pursuant to a permit or had an adverse ruling on the permit or no action on it within six months. In the latter two circumstances, the water Court was given the supervisory or appellate authority

to require a permit to issue on the appropriate facts. In any case the actual well was intended to be constructed pursuant to a permit in existence at the time of construction. Here Cactus Valley Well Number One was so constructed. Cactus Valley Well Number Two was not and the permit to commence work has expired.

The Lewises subsequently withdrew their opposition to the application and Good filed motions for reconsideration of the court's ruling with respect to well two. Good also sought a summary judgment that would grant its application for a conditional water right. By order dated March 12, 1987, the water court denied the motion for reconsideration and reaffirmed the earlier order. On April 2, 1987, the court entered a final order under C.R.C.P. 54(b) and Good appealed the court's dismissal of its application for a conditional right for well two. The conditional water right which related to the construction of well one is not at issue in this case.

## II.

The issue on appeal centers on section 37–92–302(2), 15 C.R.S. (1986 Supp.), of the Water Right Determination and Administration Act of 1969 (Administration Act), sections 37–92–101 to –602, 15 C.R.S. (1973 & 1986 Supp.).[3] Section 37–92–302(2) provides that an application for a conditional water right, which will require construction of a well,

*shall [not] be heard on its merits by the referee or water judge* until the application *shall* be supplemented by a *permit* or evidence of its denial by the state engineer pursuant to section 37–90–137 or evidence of the state engineer's failure to grant or deny such a permit within

engineer pursuant to section 37–90–137 or evidence of the state engineer's failure to grant or deny such a permit within six months after application to the state engineer therefor.

**3.** The Colorado Ground Water Management Act (Management Act), sections 37–90–101 to –141, 15 C.R.S. (1973 & 1986 Supp.), was enacted in 1965 to establish a procedure for appropriation of designated ground water and for devoting it

to a beneficial use. *State ex rel. Danielson v. Vickroy,* 627 P.2d 752 (Colo.1981); ch. 319, sec. 1, §§ 148–18–1 to –38, 1965 Colo.Sess.Laws 1246–68. In response to our decision in *Fellhauer v. People,* 167 Colo. 320, 447 P.2d 986 (1968), and to remedy problems in ground water administration under the Management Act, the General Assembly promulgated the Administration Act in 1969. Ch. 373, sec. 1, §§ 148–21–1 to –45, 1969 Colo.Sess.Laws 1200–19.

six months after application to the state engineer therefor.

(Emphasis added.) Section 37–90–137(1), 15 C.R.S. (1986 Supp.), of the Management Act prohibits the drilling of new wells outside of a designated ground water basin unless the state engineer issues a permit to construct the well.[4] *See* § 37–90–138(3), 15 C.R.S. (1973) (no well, requiring authority from the state engineer, shall be drilled without a well permit). The sole issue in determining if the Lewises' motion for summary judgment was properly granted is whether an unexpired well permit under section 37–90–137 was a prerequisite to a hearing on the merits of Good's application for a conditional water right on well two.

Good claims that under the plain wording of section 37–92–302(2) an application for a conditional water right need only be supplemented by a well permit, whether valid or invalid, for the application to be heard on its merits. The water court's construction, according to Good, causes tributary ground water and surface water to have different appropriation requirements. Good asserts that such an interpretation frustrates the General Assembly's intent in the Adminis-

tration Act to "integrate the appropriation, use, and administration of underground water tributary to a stream with the use of surface water," section 37–92–102(1)(a), 15 C.R.S. (1986 Supp.), by establishing a single system of water right appropriation and administration applicable to both tributary ground water and surface water. Specifically, Good contends that the water court's construction of section 37–92–302(2), which applies the time constraints for well permits under section 37–90–137(3)(a)(I), 15 C.R.S. (1986 Supp.), to applications for conditional water rights, is inconsistent with the four-year requirement under section 37–92–301(4) of establishing reasonable diligence,[5] and defeats the purpose of the relation back doctrine.[6] In our view, section 37–92–302(2) is ambiguous regarding the expiration date of the well permit that supplements an application for a conditional water right and is a prerequisite to a hearing on the application. After reviewing the text of the Administration Act and the Management Act and considering the intent of the General Assembly, we conclude that, when a permit is granted to drill

4. Under section 37–90–103(6)(a), 15 C.R.S. (1986 Supp.), "designated ground water" means:

> that ground water which in its natural course would not be available to and required for the fulfillment of decreed surface rights, or ground water in areas not adjacent to a continuously flowing natural stream wherein ground water withdrawals have constituted the principal water usage for at least fifteen years preceding the date of the first hearing on the proposed designation of the basin, and which in both cases is within the geographic boundaries of a designated ground water basin.

For the purpose of defining the waters of a natural stream, "underground water" (ground water) refers to the

> water in the unconsolidated alluvial aquifer of sand, gravel, and other sedimentary materials, and all other waters hydraulically connected thereto which can influence the rate or direction of movement of the water in that alluvial aquifer or natural stream. Such "underground water" is considered different from "designated ground water...."

§ 37–92–103(11), 15 C.R.S. (1973). "Tributary ground water" is underground water that will, if not intercepted, reach and become part of a natural stream. "Nontributary ground water" is underground water which will not reach and become part of a natural stream. McHendrie,

*The Law of Underground Water,* 13 Rocky Mtn. L.Rev. 1, 3 (1940). In this case, well two was to appropriate ground water tributary to the Colorado River.

5. Section 37–92–301(4), 15 C.R.S. (1973), provides:

> In every fourth calendar year after the calendar year in which a determination is made with respect to a conditional water right, the owner or user thereof, if he desires to maintain the same, shall obtain a finding by the referee of reasonable diligence in the development of the proposed appropriation, or said conditional water right shall be considered abandoned. The ruling of the referee and the judgment and decree of the court determining a conditional water right shall specify the month in such calendar year in which application for a quadrennial finding of reasonable diligence shall be filed with the water clerk pursuant to section 37–92–302(1).

6. The relation back doctrine allows an appropriator to obtain a decree that has a priority date preceding the date of the decree. If the beneficial use is completed with reasonable diligence, the right relates back to the date of the "first step." *Sieber v. Frink,* 7 Colo. 148, 2 P. 901 (1884); 1 G. Vranesh, *Colorado Water Law* 288–89 (1987); *see supra* note 1.

a well for tributary ground water, an unexpired permit is a prerequisite to a hearing on the merits of an application for a conditional water right.

Our primary task in construing a statute is to ascertain and effectuate the intent of the General Assembly. *People v. District Court*, 713 P.2d 918 (Colo.1986); *Engelbrecht v. Hartford Accident & Indem. Co.*, 680 P.2d 231 (Colo.1984); § 2–4–203, 1B C.R.S. (1980). In determining the intent of the General Assembly, the entire act must be read and considered in context. *Travelers Indem. Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976); *Humana, Inc. v. Board of Adjustment*, 189 Colo. 79, 537 P.2d 741 (1975). Separate acts of the General Assembly must be read together and construed to avoid inconsistencies. *People v. James*, 178 Colo. 401, 497 P.2d 1256 (1972); § 2–4–206, 1B C.R.S. (1980).

Section 37–92–102(1)(a), the General Assembly's declaration of intent behind the Administration Act, provides that "it is the policy of this state to integrate the appropriation, use, and administration of underground water tributary to a stream with the use of surface water *in such a way as to maximize the beneficial use of all of the waters of this state.*" Although the Administration Act was intended to "integrate" the appropriation, use, and administration of underground water tributary to a stream with the use of surface water, it was not necessarily intended to administer surface water and tributary ground water in an identical manner. 1 G. Vranesh, *Colorado Water Law* 232 (1987) ("It is now well established that a modified form of prior appropriation governs the establishment and administration of ground water rights in Colorado."). Under the clear im-

port of section 37–92–102(1)(a), ambiguities between the treatment of surface water and tributary ground water under the act must be construed to maximize the utilization of *both* tributary ground water and surface water. *See Fellhauer v. People*, 167 Colo. 320, 447 P.2d 986 (1968) (rejecting argument that both surface water and tributary ground water must be administered in same fashion); G. Vranesh, *supra*, at 265 (discussing administration of surface water and ground water under Administration Act). Because the mechanics of appropriating ground water and surface water are not the same, different legal requirements may be required to realize the maximum utilization of both tributary ground water and surface water.[7] *See generally* G. Vranesh, *supra*, at §§ 1.1, 3.5 (discussing physical properties of ground water and surface water).

The General Assembly, in our view, intended an unexpired well permit to be a prerequisite under section 37–92–302(2) to a hearing on the merits of an application for a conditional water right. In *State v. Southwestern Colorado Water Conservation District*, 671 P.2d 1294 (Colo.1983), we held that a claimant is not required to file a well permit prior to filing an application for a determination of a water right but may file the application to protect his priority date while an application for a well permit is pending before the state engineer. Under section 37–92–302(2), "[t]he water court is merely prohibited from entering a final decision on that application before the state engineer's decision is rendered or that official fails to grant or deny a permit within six months after application is made." *Southwestern Colo. Water Conservation Dist.*, 671 P.2d at 1320.[8] The application of

---

**7.** In *Kuiper v. Warren*, 195 Colo. 541, 545, 580 P.2d 32, 35 (1978), we recognized the differences in appropriating designated ground water and surface water when we approved the following language of the trial court:

There are reasonable grounds for the adoption of specific time limits in relation to the management of designated ground waters as distinguished from the "due diligence" requirements applicable to surface appropriations. As a practical matter, it is apparent that the construction, installation and operation of an irrigation well is in no way compa-

rable, for example, to the planning, construction, and operation of a transmountain diversion project.

**8.** In *Cache La Poudre Water Users Association v. Glacier View Meadows*, 191 Colo. 53, 550 P.2d 288 (1976), we construed the permit requirement of section 37–92–302(2) in the context of an application for approval of a plan of augmentation. In *Cache La Poudre Water Users Association,* Glacier View Meadows filed two applications for approval of plans of augmentation which were consolidated by the water

the well permit requirements in section 37–90–137(3)(a)(I) to section 37–92–302(2) of the Administration Act maximizes the use of tributary ground water by preventing speculation and hoarding of ground water, by encouraging the rapid completion of wells, and by preventing overappropriation of ground water resources.

Section 37–90–137(3)(a)(I) establishes strict time constraints for the completion of wells utilizing tributary ground water. Under this section, a permit to construct a well outside a designated ground water basin, unless otherwise provided, expires one year after it is issued.[9] The permit does not expire if the state engineer receives evidence that the water from the well was applied to a beneficial use. *Id.* It may be extended for one period of no longer than a year if, prior to its expiration, the applicant establishes good cause why the well was not completed and provides an estimate of the time necessary to complete the well. *Id.* If a well is not completed before the permit expires under section 37–90–137(3)(a)(I), another permit must be issued and a new priority date must be established. § 37–90–137(3)(c); *see Town of De*

court. The lands embraced by the plans were not within a designated ground water basin. Glacier View Meadows, through ownership of shares of an irrigation company, was entitled to both reservoir and direct-flow water. In the plans of augmentation, Glacier View Meadows proposed to drill wells to be used exclusively for domestic use. The water appropriated from the wells, less return flows, was to be fully replaced by Glacier View Meadows' reservoir and direct-flow rights. Cache La Poudre Water Users Association and North Poudre Irrigation Company filed statements of opposition. The water court approved the plans of augmentation.

The objectors appealed, claiming, *inter alia,* that under section 37–92–302(2) "the request for a well permit, and action thereon by the State Engineer, is a condition precedent to the filing of an application for approval of the plan for augmentation." We rejected the argument and stated:

> We find nothing in the statutes which makes such a requirement for the plan under consideration. *It is true that, if this plan required the completion or the immediate construction of wells, then the State Engineer's issuance of well permits, or his denial of the same, would be a prerequisite to approval of the plan....*
> We do not interpret the statute [§ 37–92–302(2)] to require action by the State Engineer upon application for well permit as a condition precedent to consideration and approval of a plan for augmentation.... We interpret the word "require" [in section 37–92–302(2)] to mean that the plan must call for the completion or immediate construction of wells.... It is apparent that the purpose and intent of this statute under the circumstances involved here, is to permit the court first to approve or disapprove a plan, and if it approves of the plan, let the issuance of well permits follow.

191 Colo. at 62, 550 P.2d at 294–95 (emphasis added). Unlike an application for approval of a plan of augmentation, an application for a conditional water right requires the timely completion of a well with reasonable diligence. Accordingly, *Cache La Poudre Water Users Association* requires a well permit as a prerequisite

under section 37–92–302(2) to adjudication of the application for a conditional water right.

**9.** In *Mooney v. Kuiper,* 194 Colo. 477, 573 P.2d 538 (1978), we construed section 37–90–137(3)(a), 15 C.R.S. (1973), as allowing "repeated applications for well permit extensions so that holders of conditional decrees may pursue their water rights to the full extent of those decrees." *Id.* at 480, 573 P.2d at 540. The General Assembly subsequently amended the statute to allow only one extension for well permit applications issued on or after April 21, 1967. Ch. 349, sec. 1, § 37–90–137(3)(a), 1979 Colo.Sess.Laws 1377. Section 37–90–137(3)(a) now provides in relevant part:

> (I) Any permit to construct a well outside a designated ground water basin, except a permit issued pursuant to subsection (4) or subsection (7) of this section, issued on or after April 21, 1967, shall expire one year after the issuance thereof, unless the applicant to whom such permit was issued shall furnish to the state engineer, prior to such expiration, evidence that the water from such well has been put to beneficial use or unless, prior to such expiration, the state engineer, upon application and with good cause shown as to why the well has not been completed and an estimate of the time necessary to complete the well, extends such permit for only one additional period certain, not to exceed one year
>
> ...

In the General Assembly's hearings on the amendment limiting an applicant to one extension of no longer than one year, the stated purpose of the amendment was to prevent the speculation and hoarding of ground water. Legislators expressed concern that the construction of section 37–90–137(3)(a) in *Mooney v. Kuiper* would be abused by applicants indefinitely prolonging their well permits. The legislators concluded that a one-year permit and a single one-year extension were a sufficient period of time to complete a well and to supply evidence that the water had been applied to a beneficial use.

*Beque v. Enewold,* 199 Colo. 110, 606 P.2d 48 (1980) (unexcused failure to file an application for a quadrennial finding of reasonable diligence under section 37–92–301(4) mandates cancellation of the applicant's conditional rights). One purpose of the well permit requirement is to allow a well to be constructed under the supervision of the state engineer. § 37–90–138(1); Colorado Legislative Council, *Report to the Colorado General Assembly of 1969,* at 6 (1968).

The time limits in section 37–90–137(3)(a)(I), like those in section 37–90–108(1)(a) and (2)(a), reflect the General Assembly's determination that wells, whether inside or outside a designated ground water basin, must be constructed and water placed to a beneficial use within one year, with a single extension of no more than one year upon a showing of good cause. Accordingly, the General Assembly has limited reasonable diligence for tributary and nontributary ground water to one year after a well permit is issued, and upon a showing of good cause why the well was not completed with an estimate of the time necessary to finish the well, an additional extension of time may be obtained for not in excess of one year. § 37–90–137(3)(a)(I); *see supra* note 9. These limitations afford ground water appropriators a reasonable opportunity to complete their appropriations while ensuring that the water is put to a beneficial use at the earliest possible time. The permit requirement, by avoiding delay in development, prevents the hoarding of ground water. *See Rocky Mountain Power Co. v. Colorado River Water Conservation Dist.,* 646 P.2d 383 (Colo. 1982) (conditional water decrees will not be granted to those who cannot show more

than a speculative or conjectural future beneficial use).

Requiring a valid well permit as a prerequisite under section 37–92–302(2) to the hearing on the merits of an application for a conditional right also prevents overappropriation of ground water and injury to other appropriators.[10] The state engineer is responsible for the administration and distribution of the waters of this state on the basis of priorities established by adjudicated decrees, the Colorado Constitution, statutory and case law, and written orders of the state engineer. §§ 37–92–301(1), –301(3), –501(1), 15 C.R.S. (1973 & 1986 Supp.); G. Vranesh, *supra,* at 509. Section 37–90–137(2) describes the duties of the state engineer in considering an application for a well to be drilled outside the boundaries of a designated ground water basin:

> Upon receipt of an application for ... a new, increased, or additional supply of ground water from an area outside the boundaries of a designated ground water basin ... the state engineer shall make a determination as to whether or not the exercise of the requested permit will materially injure the vested water rights of others. If the state engineer finds that there is unappropriated water available for withdrawal by the proposed well and that the vested water rights of others will not be materially injured, and can be substantiated by hydrological and geological facts, he shall issue a permit to construct a well, but not otherwise; except that no permit shall be issued unless the location of the proposed well will be at a distance of more than six hundred feet from an existing well....

The use which the water judge is to make of the state engineer's findings in evaluat-

**10.** In recommending the addition of the permit requirement to section 37–92–302(2), the Colorado Legislative Council stated:

> The amendment would reconcile this section with section 148–18–36(3) which states that a permit to construct a well is a prerequisite to drilling a well. The intention of this change is to insure that the state engineer can prevent drilling of wells. However, this amendment would not prevent a water user from appealing a decision of the state engineer not to issue a permit to construct a well.

Colorado Legislative Council, *Report to the General Assembly of 1970,* at 48 (1970).

Section 148–18–36(3), 9 C.R.S. (1965 Supp.), provides:

> A "permit to construct a well" shall not have the effect of granting nor conferring a ground water right upon the user, nor shall anything in this section be so construed. Nevertheless, the permit shall be a necessary prerequisite for the initiation of a new or additional supply and shall be prima facie evidence of the date and extent thereof.

ing a conditional water right application is set forth in section 37–92–305(6), 15 C.R.S. (1986 Supp.). In the case of an application for a conditional water right that requires construction of a well, the referee or the water judge shall consider the findings of the state engineer under section 37–90–137. § 37–92–305(6). The state engineer's findings on material injury are supported by a presumption of validity. *Danielson v. Jones,* 698 P.2d 240 (Colo.1985). The well permit requirement of section 37–92–302(2) "recognizes the special expertise of the state engineer with respect to wells and their effect on other water users by requiring that an applicant for a change of water right involving a new well apply for a well permit before seeking judicial approval of the change." *Broyles v. Fort Lyon Canal Co.,* 638 P.2d 244, 250 (Colo.1981).[11]

Since Good's permit for well two expired before the application for a conditional water right was heard on its merits, the water court could not, under section 37–92–302(2), adjudicate the application. The petitioner's remaining arguments are without merit. Accordingly, the judgment of the water court is affirmed.

---

**11.** Good argues that under the trial court's interpretation, ground water appropriators who had either been denied a permit or upon whose permit the state engineer had failed to act would enjoy the full benefits of the Administration Act; that is, upon entry of a conditional decree those appropriators would have a period of time limited only by their continued reasonable diligence in which to perfect their water rights. According to Good, those who had been granted a permit would not enjoy the full benefits of the Administration Act because they would be forced to perfect their rights within no more than two years as required by section 37–90–137(3)(a). We find no merit in these contentions. An applicant whose application for a well permit had either been denied or not acted upon by the state engineer would not, upon entry of a conditional decree, be exempt from complying with the time constraints imposed by section 37–90–137(3). Under section 37–92–305(6), if the water court grants a conditional decree, the state engineer shall issue a well permit under section 37–90–137. Accordingly, an applicant, who had not received a permit from the state engineer prior to the entry of a conditional decree, must comply with the time constraints under section 37–90–137(3)(a) to perfect his conditional water right.