PERRY PARK WATER & SANITATION
DISTRICT, Applicant–Appellant,

v.

CORDILLERA CORPORATION and
Larkspur Properties, the Ferris F.
Hamilton Revocable Trust, Sharon R.
Willingham, Richard Brown, Glenn
Johnson, and State Engineer, Objec-
tors–Appellees.

No. 90SA157.

Supreme Court of Colorado,
En Banc.

Sept. 23, 1991.

Rehearing Denied Nov. 4, 1991.

Cogswell & Eggleston, P.C., David D. Dominick, Denver, for applicant-appellant.

Holland & Hart, Anne J. Castle, Denise W. Kennedy and Peter W. Downing, Denver, for objectors-appellees Cordillera Corp. and Larkspur Properties, Ltd.

Justice KIRSHBAUM delivered the Opinion of the Court.

Appellant Perry Park Water & Sanitation District (the District) appeals the judgment of the District Court, Water Division No. 1 (the water court), granting a motion for partial summary judgment filed by appellees, Cordillera Corporation and Larkspur Properties (hereafter Cordillera). The motion asserted that the District lacked authority to appropriate certain underground nontributary ground water lying beneath land owned by Cordillera. The water court agreed, holding that a resolution passed by the District in 1985 (the 1985 Resolution) upon which the District relied for its authority to appropriate the disputed ground water failed to comply with notice requirements contained in section 37–90–137(8), 15 C.R.S. (1990) (the Act). We affirm the water court's ruling.

I

The material facts are not disputed. On September 30, 1981, the District filed an application with the water court requesting entry of a decree awarding it underground nontributary water rights to water in the Arapahoe aquifer located in Douglas County. On May 20, 1982, and May 28, 1982, the District filed two similar applications requesting the appropriation of underground nontributary water rights to water in the Denver and Laramie–Fox Hills aquifers located in Douglas County. On December 16, 1981, the water court referee denied the Arapahoe application because the District neither owned nor controlled the land overlying the subject ground water. The three applications were later consolidated.

Subsequently the General Assembly adopted the Act which by its terms became effective on July 1, 1985. Ch. 285, sec. 3, § 37–90–137(8), 1985 Colo.Sess.Laws 1160, 1169. The Act established procedures authorizing special districts and other governmental entities to adopt implied consent resolutions effectively waiving the requirement of obtaining a landowner's consent to appropriate nontributary ground water underlying the landowner's property.

On June 19, 1985, at a regularly scheduled meeting held after the adoption of the Act but prior to its effective date, the District adopted the 1985 Resolution. In so doing, it noted the passage by the General Assembly of Senate Bill 5, which legislation

contained the substantive provisions of the Act. The 1985 Resolution asserted, *inter alia*, appropriation by the District of all nontributary ground water in the Dawson, Denver, Arapahoe, and Laramie–Fox Hills aquifers underlying the land within its boundaries, effective July 11, 1985. Some 550 acres of land owned by Cordillera lies within the boundaries of the District.[1]

In June 1986, the District filed amended applications in the water court, asserting that pursuant to the Act and the 1985 Resolution it had acquired control of the nontributary ground water described in its original applications. Cordillera objected to the amended applications. Cordillera and the District subsequently filed cross-motions for partial summary judgment on the issue of the validity of the 1985 Resolution. On March 9, 1988, the water court entered an order granting Cordillera's motion. The water court concluded that by failing to give notice of its intent to adopt an implied consent resolution prior to its June 19, 1985, adoption of the 1985 Resolution, the District failed to comply with the notice requirements of the Act.

On May 2, 1988, pursuant to the Act, the District adopted a second implied consent resolution appropriating the nontributary ground water underlying all property within the District's boundaries. The District later amended that resolution to exclude ground water underlying Cordillera's property. On March 6, 1990, the water court entered a decree granting the District's amended applications. On appeal, the District asserts that the water court erred in holding the 1985 Resolution invalid.

## II

Cordillera argues that this appeal should be dismissed as moot because the resolution adopted by the District on May 2, 1988, as amended, superseded the 1985 Resolution. Cordillera asserts that the District no longer has an interest in the water court's conclusion with respect to the validity of the 1985 Resolution. We disagree.

■ A case becomes moot when any judgment rendered therein can have no practical legal effect upon the controversy. *Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424 (Colo.1990); *Tippett v. Johnson*, 742 P.2d 314 (Colo.1987); *Barnes v. District Court*, 199 Colo. 310, 607 P.2d 1008 (1980). *See Lininger v. City of Sheridan*, 648 P.2d 1097 (Colo.App.1982). The District contends, in essence, that if the water court rejected its applications because of the erroneous conclusion that the 1985 Resolution was invalid, the District is entitled to a hearing and a judgment on the merits of the claims set forth in those applications—claims that included ground water beneath Cordillera's land. By adopting the 1988 Resolution, the District did not abandon its right to appeal the water court's ruling on the validity of the 1985 Resolution. In the event this court were to reverse the water court's ruling that the 1985 Resolution was not valid, Cordillera would be entitled to assert other grounds in opposition to the District's applications. Thus the adoption of the 1988 Resolution did not end the controversy between the parties.

## III

■ In adopting the 1985 Resolution the District relied upon the following provisions of the Act:

Therefore, wherever any existing municipal or quasi-municipal water supplier is obligated either by law or by contract in effect prior to January 1, 1985, to be the principal provider of public water service to landowners within a certain municipal or quasi-municipal boundary in existence on January 1, 1985, said water supplier may adopt an ordinance or resolution, after ten days' notice pursuant to the provisions of part 1 of article 70 of title 24, C.R.S., which incorporates ground water from the Dawson, Denver, Arapahoe, Laramie–Fox Hills, or Dakota aquifers underlying all or any specified portion of such municipality's or quasi-municipality's boundary into its actual mu-

---

1. According to an affidavit of an expert witness for Cordillera, the ground water underlying Cor- dillera's property was valued in excess of $2,500,000 in mid–1985.

nicipal service plan. Upon adoption of such ordinance or resolution, a detailed map of the land area as to which consent is deemed to have been given shall be filed with the state engineer. Upon the effective date of such ordinance or resolution, the owners of land which overlies such ground water shall be deemed to have consented to the withdrawal by that water supplier of all such ground water....

§ 37–90–137(8), 15 C.R.S. (1990). The ten days' notice referred to in the Act must be published "once each week for three successive weeks in any daily, weekly, semiweekly, or triweekly newspaper...." § 24–70–106(2)(a), 10B C.R.S. (1988).

The District adopted the 1985 Resolution on June 19, 1985, effective July 11, 1985. It argues that because prior to July 11, 1985, it published a description of the resolution, together with a statement of its effective date, in compliance with section 24–70–106(2)(a), it satisfied the intent and purpose of the Act. In essence, the District contends that its decision to delay the effective date of the 1985 Resolution until a time subsequent to the effective date of the Act permits it to benefit from the Act. We reject this argument.

The 1985 Resolution was adopted on June 19, 1985. On that date, only owners of property overlying nontributary ground water or applicants who obtained the consent of such owners were authorized to obtain well permits for the withdrawal of such water. § 37–90–137(4), 15 C.R.S. (1973). Cordillera at no time consented to the District's application. Thus, the District had no authority to appropriate nontributary ground water underlying Cordillera's land on the date it adopted the 1985 Resolution.

■ The District contends that the date of the adoption of a resolution is inconsequential when, as here, the resolution by its terms does not become effective until some later date. The District suggests that the 1985 Resolution was of no legal significance until July 11, 1985, and that said resolution was validated on July 1, 1985, when the Act became effective. This

argument ignores the fact that on June 19, 1985, the District had no statutory authority to adopt any implied consent resolution. Legislation adopted by a governmental entity in excess of its authority is of no force or effect. *Orchard City v. Delta County Comm'rs,* 751 P.2d 1003 (Colo.1988); *Beaver Meadows v. Board of County Comm'rs,* 709 P.2d 928 (Colo.1985); *Pennobscot, Inc. v. Board of County Commr's,* 642 P.2d 915 (Colo.1982); *Board of County Comm'rs of Pitkin County v. Pfeifer and Capital Improvement Corporation,* 190 Colo. 275, 546 P.2d 946 (1976). *See Dollaghan v. County of Boulder,* 749 P.2d 444 (Colo.App.1987). Because the District lacked statutory authority to adopt an implied consent resolution on June 19, 1985, the 1985 Resolution, including the language describing its effective date, had no force or effect.

■ Even if we were to assume, *arguendo,* that its adoption of the 1985 Resolution was in some manner authorized, the District failed to satisfy the notice requirements of the Act. When statutory language is free from ambiguity, courts should construe such language in accord with the plain meaning of the words adopted by the General Assembly. *Thiret v. Kautzky,* 792 P.2d 801, 806 (Colo.1990); *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1111 (Colo.1990); *Colorado Dep't of Social Servs. v. Board of County Comm'rs,* 697 P.2d 1, 18 (Colo.1985); *Humana v. Board of Adjustment,* 189 Colo. 79, 82, 537 P.2d 741, 743 (1975); *American Metal Climax, Inc. v. Claimant Butler,* 188 Colo. 116, 119, 532 P.2d 951, 952 (1975). The Act contains the following specific language with respect to the adoption of an implied consent resolution by a qualified water supplier:

[A] water supplier may adopt an ordinance or resolution, after ten days' notice.... Upon adoption of such ordinance or resolution, a detailed map of the land area as to which consent is deemed to have been given shall be filed with the state engineer....

§ 37–90–137(8), 15 C.R.S. (1990). The General Assembly has prescribed the following

sequence of events: (1) publication of ten days' notice informing the public of the pendency of an implied consent resolution; (2) adoption of an implied consent resolution; and (3) filing of a map of the land affected by such resolution with the state engineer. The statute unequivocally requires publication of notice prior to the adoption of any implied consent resolution. Such requirement is essential to permit parties to protest or influence proposed legislative determinations affecting their interests.

The District gave no prior notice of its intent to adopt the 1985 Resolution. Whether for administrative convenience, as the District justifies its conduct, or for any other reason, the District did not comply with the requirements of the Act. Thus, even were we to accept the District's argument that the 1985 Resolution was authorized by the Act, that resolution would be invalid because the District failed to comply with the Act's requirements.

The District also argues that it in fact gave adequate prior notice of the adoption of the 1985 Resolution because such resolution was proposed and enacted at a regularly scheduled meeting of the District's board of directors, which meeting was pursuant to notice. Assuming, *arguendo*, that the meeting was pursuant to notice,[2] we construe the Act to require prior specific notice of a governmental entity's intent to adopt an implied consent resolution. A contrary construction of the statutory requirement would contravene the clear intent of the statute to permit opponents of such proposal to appear and protest the contemplated action prior to its adoption. Furthermore, a construction of the Act that would substantially impair the ability of a property owner to effectively challenge the inclusion of the owner's property in an implied consent resolution would raise substantial questions as to the constitutional validity of the Act under due process standards. *See Patterson v. Cronin*, 650 P.2d 531, 537 (Colo.1982). A construc-

tion of statutory language that creates doubts as to the constitutional validity of the legislation should be assiduously avoided if an alternative construction consistent with legislative intent is available. *See Colorado Ass'n of Public Employees v. Lamm*, 677 P.2d 1350, 1357 (Colo.1984); *People ex. rel. C.M.*, 630 P.2d 593, 594 (Colo.1981).

In view of our determination that the 1985 Resolution is invalid, we do not address other arguments presented by Cordillera in support of the judgment of the water court.

IV

For the foregoing reasons, the judgment of the water court is affirmed.

---

2. The record contains no evidence of the asserted publication, but Cordillera has not suggested

the District's assertion of fact is erroneous.