**Paul WILSON, Petitioner–Appellant,**

v.

**STATE DEPARTMENT OF HUMAN SERVICES, Respondent– Appellee.**

No. 96CA1823.

Colorado Court of Appeals, Div. II.

Aug. 20, 1998.

As Modified on Denial of Rehearing Nov. 5, 1998.

Fischer, Howard & Francis LLP, Steven G. Francis, Fort Collins, Colorado, for Petitioner–Appellant.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Stacy L. Worthington, Assistant Attorney General, Denver, Colorado, for Respondent–Appellee.

Opinion by Judge CRISWELL.

Plaintiff, Paul Wilson, appeals from the judgment of the district court that affirmed an order of the Department of Human Services (department) refusing to expunge a report respecting plaintiff from the central registry of child protection. He asserts that his rights to due process were denied by the department both before and during the hearing and that at least a portion of the findings and conclusions of an Administrative Law Judge (ALJ) upon which the department's order was based is not supported by the record. We agree and reverse.

Pursuant to § 19–3–313(1), C.R.S.1997, a "central registry" has been established "for the purpose of maintaining a registry of information concerning each case of confirmed child abuse . . . ." Numerous categories of persons who have reasonable cause to know or suspect that child abuse has occurred must report the same to the county department of social services. Section 19–3–304, C.R.S.1997. The county department is to conduct an investigation of the allegation, and if that investigation confirms that child abuse has occurred, a report is to be made to the central registry. Section 19–3–308, C.R.S.1997.

The director of the central registry has the authority to "amend, seal, or expunge any record upon good cause shown and notice to the subject of the report." Section 19–3–313(5)(a), C.R.S.1997.

Within 60 days after receiving a report, the director is required to send a notice to "each subject placed on the central registry,"

notifying that subject of his or her placement on the registry. That notice is required to contain "the name of the child, type of abuse, date of the incident, county department that filed a report with the registry . . . and the subject's rights and responsibilities in regard to amending, sealing, or expunging the report." Section 19–3–313(6)(a), C.R.S.1997.

Within two years after this notice is mailed, the subject of the report may request the director to amend, seal, or expunge the report from the record. Section 19–3–313(7)(a), C.R.S.1997. If the director refuses to do so, the subject has the right to request a hearing under the Administrative Procedure Act, at which the issues to be resolved are:

whether the record of the report in the central registry should be amended, sealed, or expunged on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with [the statute].

Section 19–3–313(7)(a).

Plaintiff was an attendant at Mount View School, an institution for juvenile offenders. In September 1993, he and another employee were in charge of an area used to isolate those juveniles who, for various reasons, were to be temporarily segregated from other juveniles.

On September 25 of that year, a juvenile, who was within about one month of becoming an adult and who had caused disturbances previously, was brought to plaintiff to be placed in isolation. On a previous occasion when the juvenile had been placed in isolation, he had flooded the area by overflowing the sink located there and had purposely urinated and vomited on the floor.

According to plaintiff, information that had been given to him indicated that the juvenile could have a pencil, which can be used as a dangerous instrument. Accordingly, he required the juvenile to remove his clothing to make sure that he had not secreted the pencil upon his person.

In addition, plaintiff said that the juvenile had himself requested to be placed in isolation, and when he arrived there, he also requested that he be restrained so that he

would not again be disruptive. Consequently, plaintiff had the juvenile sit on a metal bed frame and handcuffed one of his arms at the wrist to the bed.

At the hearing that resulted in the department's order, the ALJ rejected plaintiff's testimony as to the reasons for his actions, but he found that, for punishment purposes, plaintiff had required the juvenile to disrobe and had restrained him in the manner which plaintiff described.

After taking these actions, plaintiff left the area and told another employee to watch over the juvenile. This employee checked the juvenile approximately every five minutes. Although plaintiff maintained that he expected the other employee to remove the juvenile from isolation after a short period, the ALJ found that, because plaintiff had placed the juvenile in isolation under restraints and had given no directions to the other employee, plaintiff remained responsible for the juvenile.

At any rate, the other employee did not remove the juvenile from isolation, and he stayed there under the restraint described until plaintiff returned to the area about an hour and a half later. When he returned, plaintiff removed the juvenile's restraints, had him put his clothes on, and returned him to his regular holding area.

It is undisputed that the juvenile received no physical injuries in the form of bruises or otherwise as a result of this incident. However, upon the juvenile's complaint, an investigation was undertaken both by the county department of social services and by the local law enforcement agency.

During this investigation, the juvenile asserted that, on September 10, plaintiff had restrained him by placing handcuffs on each ankle and attaching them to a bedframe. He displayed evidence of old bruising which the investigating officer opined, based on his experience, was not caused because the handcuffs had been applied too tightly but because of the juvenile's actions in pulling and struggling against them.

As a result of this investigation, the local district attorney concluded that no crime had been committed. However, two administrative actions were taken against plaintiff.

First, because plaintiff's actions violated various policies established by the Division of Youth Services of the Department of Institutions, his employment was terminated, and that termination was upheld by the State Personnel Board and by a division of this court. *See Wilson v. State Personnel Board,* (Colo.App. No. 94CA1862, May 23, 1996) (not selected for official publication).

Second, the local county department of social services made a report of a confirmed instance of child abuse to the central registry. This report was not in narrative form. It was, rather, on a pre-printed form (CWS59). This form contains the date that the incident was reported to the local county department and the names of the juvenile and plaintiff. However, it does not reflect the date or dates of the alleged abuse upon which the report is based, nor does it describe any specific incident or incidents. It contains only a listing of general descriptions of the "nature of abuse/neglect confirmed by investigation," areas to check off one or more of those descriptions, and the number of incidents of the same.

The report filed with respect to plaintiff indicates that there was an incident of abuse which resulted in "cuts/bruises/welts" and an incident of abuse which resulted in "physical neglect." However, there is no way to determine from the face of this form whether it refers to a single incident in which both types of abuse were involved or to two separate incidents.

At the hearing before the ALJ, plaintiff testified, without contradiction, that the director did not give him notice of the filing of this report as required by § 19–3–313(6)(a). And, no such notice is contained within the record before us. Rather, plaintiff said that he learned of his listing in the central registry only as the result of the State Personnel Board hearing. After that hearing, he went to the central registry to inquire about his listing and was provided with a computer printout which summarized the sparse information contained on form CWS59.

This computer printout does not provide any information with respect to plaintiff's right to have a report amended, sealed, or expunged. Nevertheless, plaintiff apparently made a written request pursuant to § 19–3–313(6)(b) to expunge the report, and the director denied that request, from which decision plaintiff appealed. As a result, the director referred his appeal to the ALJ, noting that the appeal was from a decision not to expunge "*the* report regarding *a* finding of neglect and physical abuse under date(s) of *9/27/93.*" (emphasis supplied)

While this referral clearly specified only a single incident, plaintiff's counsel apparently learned that there were allegedly two incidents involved, one occurring on September 25, 1993, the essential facts of which plaintiff admitted, and an earlier one, occurring on either September 10, 1993 (as alleged by the juvenile) or on September 18, 1993. Hence, he requested discovery relating to all three dates.

The ALJ authorized certain of the discovery requested with respect to any incident allegedly occurring on September 10 and September 25, but he denied the request for discovery with reference to September 18. In doing so, the ALJ relied upon the representation by counsel for the department that the earlier incident occurred "on or about" September 10, to rule that:

If somebody is going to try to testify about September 18th, I am not going to allow it.

Several days before the hearing before the ALJ, the director of the central agency purported to "amend" the report filed by the county department, by making two reports from that form. In addition, the director added to one of the reports an allegation of "lack of supervision" that was not referred to in the county department's report. No prior notice of these amendments was given to plaintiff, and he did not learn of them until the eve of the hearing.

As amended, one of these reports charged that the nature of the abuse was both "physical neglect" and "lack of supervision." The second amended report alleged that the abuse consisted of "cuts/bruises/welts." Neither of these reports, however, gave any date for any incident, nor did either report provide any description of the incident upon which the report was founded.

After an evidentiary hearing, the ALJ denied plaintiff's request to expunge these reports. He concluded that the director had authority to make two reports out of one. He also determined that one amended report (which described the alleged abuse as "cuts/bruises/welts") accurately described an incident occurring, not on September 10, 1993, as the juvenile alleged, but on September 18, and therefore, that report could not be expunged. He also concluded that the other amended report, which alleged that the abuse consisted of "physical neglect" and "lack of supervision," referred to the incident of September 25, 1993, and that that report also accurately described an incident of child abuse and could not be expunged. The department approved the ALJ's findings and conclusions.

The district court affirmed the department's decision, from which affirmance plaintiff appeals.

## I.

■ Plaintiff first asserts that the ALJ erred in concluding that the director had the authority to amend the initial report by making two reports out of one and by adding an allegation that a confirmed report of child abuse consisted of "lack of supervision." We agree.

The statutes grant to the director the authority to amend a report filed with the central registry under only two circumstances.

First, under § 19–3–313(7)(a), an amendment may be made at the request of the subject of the report. Since plaintiff made no such request, that provision is obviously inapplicable here.

Second, the director is given general authority to amend a report by § 19–3–313(5)(a). However, that statute expressly provides that such authority may be exercised only "upon good cause shown and notice to the subject of the report."

The notice that this statute requires to be given to the subject is in addition to the

notice of the filing of the initial report required by § 19–3–313(6)(a). And, because the director's authority in this respect can be exercised only *"upon* notice" to the subject, the statute requires that notice of a *proposed* amendment be given so that the subject of the report may dispute the existence of "good cause" for that amendment. *See Perry Park Water & Sanitation District v. Cordillera Corp.,* 818 P.2d 728 (Colo.1991) (statute authorizing action "after" notice requires notice before action is authorized); *Kemp v. Empire Savings,* 660 P.2d 899 (Colo.1983) (statute authorizing savings institution to reject as successor debtor "the person to whom the real estate would be sold" authorizes institution to require notice before proposed sale).

As noted above, it is undisputed that the director did not give plaintiff any notice of the amendments made to the original report. Hence, those amendments were improperly made, and consequently, the amended reports were being "maintained in a manner inconsistent" with the statute. Therefore, the ALJ should have ordered those amended reports expunged, *see* § 19–3–313(7)(a), and the district court should have ordered such expungement.

## II.

Because the amended reports were being maintained in violation of the pertinent statute, the sole issue that should have been addressed by the ALJ was whether the initial report also should have been expunged.

As we have noted, it is impossible to determine from the face of this cryptic report whether it was intended to refer to one or two incidents. And, because the director failed to comply with the notice requirements of § 19–3–313(6)(a), plaintiff was not provided with any additional information with respect to the subject.

Nevertheless, because plaintiff had previously participated in a hearing before the State Personnel Board, at which the September 25 incident (but no other) was the subject, he cannot, and does not, claim that he had insufficient notice of that incident. However, the initial report charged him only with

causing "cuts/bruises/welts" and of causing "physical neglect"; it made no mention of any allegation of "lack of supervision."

■ Hence, under these circumstances, we conclude that the initial report was sufficient to provide plaintiff with notice that the alleged abuse arose out of the incident of September 25 and that, in essence, plaintiff was accused of "physical neglect" of the juvenile and of being responsible for "cuts/bruises/welts" sustained by the juvenile on that date.

We also conclude, however, that this initial report cannot be construed to refer to any incident that may have occurred on September 18.

As we have noted, even though § 19–3–313(6)(a) is specific in requiring the director to give notice to a subject of the "date of the incident," the form of the report here made no reference to any such date. As we have also noted, however, the juvenile described another incident allegedly occurring on September 10, and plaintiff became aware of, and denied, that allegation sometime before the hearing.

The ALJ found that no incident involving plaintiff occurred on September 10, as the juvenile consistently asserted. However, he also found that plaintiff was involved in a similar incident on September 18 and refused to expunge the report based, in part, upon this incident. Yet, this finding was in direct contradiction to the ALJ's explicit pre-hearing ruling that he was "not going to allow" any evidence respecting a claimed September 18 incident.

■ Given these unique circumstances, then, we agree with plaintiff that, to the extent that the ALJ found that the initial report intended to refer to an incident on September 18 and that the evidence supported that report, such finding was entered in violation of plaintiff's rights to procedural due process of law and cannot stand.

## III.

■ Plaintiff also argues that the record does not support the ALJ's finding that his

actions on September 25 constituted child abuse. We also agree with this argument.

## A.

The department asserts that the decision of the State Personnel Board, which upheld plaintiff's termination of employment based on the events of September 25, collaterally estops plaintiff from asserting that the record does not support the ALJ's findings here.

However, this argument was advanced by the department for the first time on this appeal. Indeed, before the ALJ counsel for the department expressly disclaimed any reliance upon this collateral estoppel theory. Hence, the department may not rely upon that doctrine now.

■ Further, the issue before the State Personnel Board was whether plaintiff violated the policies and practices of his employer such that his termination was warranted. That Board was not required to, and did not, find that plaintiff's actions violated the statutory provisions defining "child abuse." Hence, its findings are not binding in other proceedings with respect to that issue. *See Michaelson v. Michaelson,* 884 P.2d 695 (Colo.1994).

## B.

Colo. Sess. Laws 1987, ch. 138, § 19–3–303(1)(a) at 763, the version of the statute in effect in September 1993 (*cf.* § 19–1–103(1)(a), C.R.S.1997), provided that:

As used in this part 3, unless the context otherwise requires:

(1)(a) 'Abuse' or 'child abuse or neglect' means an act or omission in one of the following categories *which threatens the health or welfare of a child:*

(I) Any case in which a child exhibits evidence of skin bruising, bleeding, malnutrition, failure to thrive, burns, fracture of any bone, subdural hematoma, soft tissue swelling, or death and either: Such condition or death is not justifiably explained; the history given concerning such condition is at variance with the degree or type of such condition or death; or the circumstances indicate that such condition may not be the product of an accidental occurrence;

(II) Any case in which a child is subject to sexual assault or molestation, sexual exploitation, or prostitution;

(III) Any case in which a child *is a child in need of services* because the child's parents, legal guardian, or custodian fails to take the same actions to provide adequate food, clothing, shelter, medical care, or supervision that a prudent parent would take .... (emphasis supplied)

The initial report here alleged that the juvenile suffered physical bruising, but the evidence is undisputed that no such bruising nor any other physical harm resulted from the events of September 25. Hence, category (I) of the statute is not applicable to the incident here.

Likewise, there was no allegation of any sexual abuse or exploitation. Thus, category (II) is also inapplicable.

The initial report alleged that the juvenile was subject to "physical neglect." However, the only possible portion of category (III) to which this allegation might refer is the statutory provision making it child abuse if a child becomes a "child in need of services" because the child's custodian "fails to take the same actions to provide adequate ... clothing ... that a prudent parent would take."

Contrary to plaintiff's testimony, the ALJ found that plaintiff had required the juvenile to remove his clothing as punishment for his prior disruptive actions when he had previously been placed in isolation. However, there is not an iota of evidence in this record that the juvenile became a child in need of services because of plaintiff's actions. Further, there is also no allegation nor evidence that the juvenile suffered physical discomfort from the elements as the result of the requirement that he disrobe. In addition, plaintiff arranged for the juvenile to be looked after by another employee, who checked on him at five minute intervals until plaintiff returned to the area about 90 minutes later.

Plaintiff's actions in this incident may well have violated the policies of Mount View school and the punishment inflicted upon the

juvenile may have been more extreme than the circumstances warranted. However, there is no evidence in the record that requiring this near 18–year–old to sit on a metal bed without clothes for an hour and a half in any manner threatened his health or welfare or caused him to become a child in need of services.

In short, while plaintiff's actions can be described as so inappropriate as to warrant the termination of his employment, they cannot, based on the evidence here, be described as child abuse under the pertinent statute.

### IV.

Given our disposition of the foregoing issues, we need not pass upon plaintiff's other claims of error.

The judgment of the district court is reversed, and the cause is remanded to that court with directions to enter an order requiring the department and the director to expunge from the central registry the initial report and all the amended reports referred to in this opinion.

JONES and TAUBMAN, JJ., concur.

